## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

### VAUGHAN V. PLEASONTON AND OTHERS.

#### June 8, 1911.

1. BROKERS—*Real Estate Agents—When Entitled to Commissions— Case at Bar.*—A real estate broker to be entitled to compensation must complete the sale. He must find a purchaser in a situation ready and willing to complete the purchase upon the terms agreed upon before he is entitled to his commissions. When he has found such a purchaser, who has entered into a valid contract, his right of compensation cannot be defeated by the fault of the seller, by his misrepresentation, or by his whimsical or unreasonable refusal to comply with his contract. In the case at bar, terms were agreed upon by the vendor and vendee, and the contract reduced to writing, but not signed. Shortly thereafter a contract prepared by the vendee's attorney was tendered to the vendors for their signature, but they refused to sign because it was essentially different from the contract made by the parties in that it contained terms that they had not agreed to, and omitted others that had been agreed upon. Thereupon the purchaser's attorney insisting upon the contract as prepared by him, the vendors declared the sale off, and sold to another purchaser for an advance price.

   *Held:* The vendors were not, under the facts of this case, either unreasonable or whimsical in refusing to execute the contract which the attorney for the vendee insisted upon. There was no completed contract of sale, and hence the broker is not entitled to any commission.

2. APPEAL AND ERROR—*Correct Verdict—Rulings on Instructions.*— This court will not enter upon an examination of instructions given and refused upon the trial, where, upon the facts presented to the jury they could not, with propriety, have found any other verdict than that at which they arrived.

Error to a judgment of the Circuit Court of Goochland county in an action of assumpsit. Judgment for the defendants. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Rosewell Page, John Rutherfoord, C. R. Sands, D. H. & Walter Leake*, for the plaintiff in error.

*Smith, Moncure & Gordon,* for the appellees.

HARRISON, J., delivered the opinion of the court.

This action was brought by R. F. Vaughan, a real estate agent, to recover of Alfred and Theresa Pleasonton $2,000, commissions alleged to be due the plaintiff on a sale alleged to have been made by him for the defendants of their landed estate in Goochland county, at the price of $40,000.

There was a verdict and judgment in favor of the defendants, to which this writ of error was awarded.

The essential facts in the case are few and undisputed. It appears that on March 10, 1909, the defendants united in the following letter to the plaintiff: "You are hereby authorized to sell our farms, composed of Bolling Hall, Woodville and Pocahontas, in Goochland county, Virginia, and containing about 2,000 acres, more or less, for the sum of $50,000, and we agree to pay you five *per cent.* commission on said price or on whatever price we accept from your customer, said commissions to be paid out of the first cash payment, if sold through your agency."

In pursuance of this authority the plaintiff, in the following May, submitted to the defendants an offer of $40,000 for the property, made by Thomas S. Winston, which they agreed to accept, upon certain terms and conditions. In pursuance of this understanding a contract was then prepared between all the parties, including the proposed purchaser, by the plaintiff Vaughan, the agent, which, "although not signed, was according to the testimony of all sides, satisfactory to the Pleasontons and to Winston; the significance of this paper being that it embodied the

terms upon which all parties were willing to meet." This
statement with respect to the Vaughan contract is taken
from the petition for the writ of error, and is fully sustained
by the evidence. This contract set forth the property sold,
which the parties of the first part covenanted to convey by a
good and sufficient deed, and provided that the purchaser
should assume a mortgage on the property of $15,000 and
pay the balance of $25,000 in cash; these terms to be com-
plied with as soon as the attorney for the purchaser should
procure all necessary papers and releases of deeds and suits
from the Circuit Court of Goochland county affecting the
title to said lands. The purchaser agreed to comply with
these terms and to pay $1,000 in cash, the receipt of which
was acknowledged in the contract, to bind the sale, which
sum was to be refunded if the title to the property was not
good.

At the time this contract was prepared, May 31, 1909, it
was understood that all parties should meet in Richmond
on the 9th day of the ensuing June and complete the sale
by carrying out its terms. In accordance with this under-
standing, the parties, except the purchaser, met in Rich-
mond. The purchaser, who was absent on other business,
designated his attorney, who was present, to act for him in
carrying into final completion the terms of purchase agreed
upon. When the parties met, the attorney for the pur-
chaser presented a contract, prepared by him, for the par-
ties to execute, which was radically different in its terms
from the Vaughan contract of May 31, which all had agreed
to. There was pending in the Circuit Court of Goochland
county against the Pleasontons a creditor's suit, in which
there had been no decree for sale, and the new contract
provided that the sale should be ratified by the court; that
a special commissioner should be appointed to unite with
the proposed vendors in a deed to the purchaser; that the
$25,000 which it had been agreed should be paid in cash

should be paid in bank to the credit of the court, and should not be paid until the attorney had procured all necessary decrees, orders, releases and other things that he might think necessary to perfect the title; that the vendors should assign to the purchaser all leases now existing between either Alfred Pleasonton or his wife, and that from the date of the contract the vendors should cut no timber on the lands, nor permit any wood or timber not already cut to be removed therefrom. This new contract also omitted the provision of the Vaughan contract which had been agreed to, that the purchaser should pay $1,000 down upon its execution to bind the contract, which was to be refunded if the title was not good.

When this contract was presented and insisted upon by the attorney of the purchaser, the proposed vendors protested that it was not the contract agreed upon, and they refused to sign it. Thereupon the attorney abandoned further conference on the subject, and the defendants treated the proposed sale as off, and on the same day sold the property to one W. E. Harris for $42,500, Harris paying $1,000 at once, assuming certain liens on the property, and agreeing to pay the vendors the balance within thirty days, which balance was to be paid in part with a certificate for 100 shares of stock in a coal and coke company, valued at $14,900.

The essential difference between the Vaughan contract, which embodied the terms upon which all parties had met and agreed, and the contract insisted upon by the attorney for Thomas S. Winston was, that the latter contract provided that $25,000 of the purchase money should be paid upon the ratification of the contract by the Circuit Court of Goochland county, and the execution by its special commissioner and the vendors of a good and sufficient deed, and that such $25,000 should not be paid into bank to the credit of the court until the attorney of the proposed pur-

chaser should procure all necessary decrees, orders, releases
and other things that he thought necessary to perfect the
title. The effect of this provision was, that after the attor-
ney had procured all necessary decrees, orders, releases and
other things he might think necessary to perfect the title—
after everything had been done that he considered neces-
sary to protect his client—that then the entire $25,000
should be paid by the purchaser into the bank to the court's
credit. This $25,000 included the equity of redemption of
the Pleasontons in the property, which, as shown by the
record, amounted to about $17,000. In other words, after
the purchaser was safe, the balance due the Pleasontons
was to be deposited to the credit of the court. It cannot
be successfully contended that they were either unreason-
able or whimsical in refusing to accede to such conditions,
so manifestly unjust to them and unnecessary for the pro-
tection of the proposed purchaser. Winston, in his testi-
mony, says that he did not "insist on the payment of the
money into court, which was done by his attorney without
his knowledge." The Vaughan contract, which all parties
had agreed to, had no such provisions as these. It only
provided for $25,000 in cash, and assuming to pay a mort-
gage of $15,000 when the attorney for the purchaser should
procure all necessary papers, releases of deeds and suits
from the Circuit Court of Goochland county affecting the
title to said lands. The Vaughan contract acknowledged
the receipt of $1,000 in cash to bind the sale. The Pleason-
tons attached great importance to this provision of the
contract, but it was omitted from the new contract pre-
pared by the attorney for the proposed purchaser. On
this point Winston, in his testimony, says that at the time
Vaughan offered him the place for $40,000 he told him that
the Pleasontons required him to pay $1,000 down in order
to bind the bargain, and that this provision was part of

the contract prepared by Vaughan, and that he did not object to it, but left the whole matter to his attorney.

"A real estate broker to be entitled to compensation must complete the sale.  He must find a purchaser in a situation ready and willing to complete the purchase upon the terms agreed upon before he is entitled to his commissions.  When he has found such a purchaser, who has entered into a valid contract, his right to compensation cannot be defeated by the fault of the seller, by his misrepresentation, or by his whimsical or unreasonable refusal to comply with his contract."  *Crockett* v. *Grayson*, 98 Va. 345, 36 S. E. 477.

In the case at bar, it is clear that there was no completed sale between the Pleasontons and Winston.  A sale of real estate involves the adjustment of many matters besides fixing the price, and these are for the determination of the seller.  These had been agreed upon in this case by the sellers and the purchaser, and had been reduced to writing by the plaintiff, who was the agent of the defendants.  These were the only terms upon which the defendants were willing to sell or had ever agreed to sell, and they were ready to carry them out.  The contract which the attorney for the purchaser sought to substitute contained terms which the defendants had never agreed to, and left out terms which had been agreed upon.  It is clear that the contract of sale which the plaintiff attempted to consummate between his principals and Thomas S. Winston was not defeated through any fault of the sellers, who were neither unreasonable nor whimsical in refusing to execute the contract which was insisted upon by the attorney for the purchaser.  The sale having failed of completion through no fault of the defendants, they are under no obligation to pay the plaintiff the commissions sought to be recovered in this suit.

As said in *Crockett* v. *Grayson, supra,* we do not deem it necessary to enter into a critical examination of the in-

structions given and refused upon the trial, for upon the facts presented to the jury they could not with propriety have found any other verdict than that at which they arrived.

The judgment of the circuit court approving that verdict must, therefore, be affirmed.

*Affirmed.*