# Wytheville

## MIDDLE ATLANTIC IMMIGRATION COMPANY V. ARDAN.

### June 12, 1913.

1. BROKERS—*Real Estate Agents—Commissions—Completed Sale—Release by Vendor.*—If a real estate agent or broker, in pursuance of his contract with a land owner, has found a purchaser ready and willing to comply with the vendor's terms, and has brought the parties together, and they have entered into a valid contract of sale which the vendor can enforce and the sale has been completed so far as the agent is concerned, he cannot be deprived of his compensation by the voluntary release of the vendee and refusal of the vendor to consummate the sale, without the assent of the agent. So likewise, the vendor is liable to the agent for his compensation if, without the latter's consent, he release the vendee rather than incur the expense or annoyance or delay of litigation.

2. INSTRUCTIONS—*Sufficiently Instructed.*—It is not reversible error to refuse a correct instruction where the principle announced in it is sufficiently stated in another instruction given.

3. BROKERS — *Real Estate Agents — Commissions — Vendor Without Fault.*—A real estate agent or broker is not entitled to recover his commission for the sale of land where the whole fault of the miscarriage of the contract of sale was on the part of the purchaser, and the vendor was without fault in the premises.

4. BROKERS — *Real Estate Agents — Commissions — Representation of Solvency by Broker.*—Where a vendor of land is not influenced by the misrepresentations of his broker as to the financial condition of his vendee, such misrepresentations do not constitute a ground for refusing to pay the broker's commission, but the rule is otherwise where the vendor has no knowledge of the financial condition of the vendee and relies upon the representation of the broker that the vendee is ready, able and willing to buy, and is financially responsible for his contracts, which representation is untrue.

5. BROKERS—*Real Estate Agents—Commissions—Failure to Sue Vendee—Advice of Counsel.*—In order to excuse a vendor from bringing suit against his vendee to enforce a contract for the sale of real estate and relieve himself from his obligation to pay his broker's

commission, it is not sufficient for him, when sued for the commission, to prove that he was advised by his counsel that such a suit would be expensive and useless, but all the facts obtainable upon that question should be laid before the jury, and if as a result it should be made to appear that a suit would have been unavailing, the vendor will be excused for declining to institute it, as the law does not compel a man to do a vain and useless thing.

Error to a judgment of the Circuit Court of Cumberland county in an action of assumpsit. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The following instructions were offered by the plaintiff and rejected:

1. The court instructs the jury that if they believe from the evidence in this case that the defendant authorized the plaintiff to sell the tract of land mentioned in the declaration at ten thousand dollars and if so sold by plaintiff to pay plaintiff a commission of $400.00 and the plaintiff sold said property to M. F. Casto, of Deerhead, Kansas, and said Casto was ready, able and willing to complete said purchase, then they must find for the plaintiff.

2. The court instructs the jury that if they believe from the evidence in this case that the defendant, personally entered into a valid, binding and enforceable written contract with M. F. Casto for the sale to said Casto of the defendant's property at the price of ten thousand dollars, and that at the time of entering into such contract said Casto was able to comply with the terms of same; and that the failure to carry out said contract was due either to the fault of the defendant or of said Casto, but was in no wise due to any fault of plaintiff, and said failure was without the consent of and contrary to the wishes of said plaintiff, then they must find for the plaintiff to the extent of his commissions.

3. The court instructs the jury that if they believe from the evidence that a valid, binding and enforceable contract was made between said Casto and the defendant through the plaintiff as his agent, and that said Casto was financially able to carry out his part of said contract, the plaintiff fully performed its duty towards the defendant, and having fully performed its duty it is entitled to its commissions, provided the failure to carry out said contract was due to no fault on the plaintiff.

4. The court instructs the jury that if Casto was financially able to perform his said contract and refused to do so, and the defendant's title to the property was good, then the defendant could have brought suit against him and have recovered the amount that Casto agreed to pay for said property under his contract with the defendant; that the plaintiff in this case could not have instituted said suit nor have done anything further to enforce the completing of said sale; and that it was the duty of the defendant to force said Casto to comply with said contract; and unless they shall believe from the evidence that the plaintiff consented to the defendant's abandoning said contract, they must find for the plaintiff.

The following instructions were given by the court:

1. If the jury believe from the evidence in this case that the defendant, after the investigation as to whether a suit against Casto would be available to compel him to comply with his contract and was advised by his counsel that a suit would be expensive and useless and would avail him nothing, then he was not bound to bring a suit against Casto, as the law does not compel a man to do a vain and useless thing.

2. The court instructs the jury that before they can find for the plaintiff they must believe that Casto was ready, willing and able in good faith to comply with his contract, and that in determining his willingness, readiness and

ability to do so, they may consider all the facts proven in this case.

3. The court instructs the jury that before they can find for the plaintiff they must believe from the evidence that the failure of Casto to complete his purchase was due either to a defect in the title or some *default* on the part of the defendant.

4. The court instructs the jury that if they believe from the evidence in this case that the defendant was ready, willing and able to comply with the contract on his part and did all that was necessary to do this, but that Casto arbitrarily and without good cause refused to accept the deed tendered him by the defendant, they must find for the defendant.

5. The jury are to determine from all the evidence in this case whether or not the plaintiffs have made a sale of the defendant's farm as under their contract they were bound to do, and the jury are the judges of the weight of the evidence and the credibility of the witnesses.

*Gregory & Boulware* and *Meredith & Cocke,* for the plaintiff in error.

*A. B. Percy* and *Wm. M. Justis, Jr.,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The Middle Atlantic Immigration Company brought its action in assumpsit against Ardan to recover the sum of $400 alleged to be due it as commissions for negotiating a sale of certain real estate owned by the defendant. The defendant pleaded non-assumpsit, and a jury was impaneled which found for the defendant, and from the judgment rendered by the court upon that verdict the Middle Atlantic Immigration Company obtained a writ of error.

On the part of the plaintiff there was evidence which proved or tended to prove that Ardan had listed with the Immigration Company a certain parcel of land owned by him in the county of Cumberland, and was to pay the plaintiff in error the sum of $500 upon the agreed price, if a purchaser was found by it. Subsequently the contract was so changed by agreement between the parties that the purchase price of the land was to be $10,000, and the plaintiff in error, if it negotiated a sale, was to receive $400 in commissions. The plaintiff in error produced a man from Kansas, named Casto, who professed himself as ready, able and willing to purchase the property in question, and was accepted as a purchaser by Ardan at the agreed price, and a written contract was signed by both Ardan and Casto, which states that in consideration of $10,000, $5,000 of which had been paid by check, Ardan agreed to sell to M. F. Casto 470 acres of land, known as "Melrose," lying in Cumberland county, together with all live stock, implements and household goods. The balance of the purchase money was to be paid by the assumption on the part of Casto of a deed of trust then upon the land for $3,500, and the residue of $1,500 was to be paid one year from date, with six *per cent.* annual interest, and to be secured by deed of trust on the property. Ardan agreed to give Casto a good and sufficient warranty deed, together with abstract of title and plat of the property, and to give possession of the farm and personal property immediately on acceptance of the deed.

It further appears that the check for the cash payment was placed by Ardan in a local bank, by which it was prematurely forwarded to a Kansas bank for collection without having a deed and abstract of title attached thereto, as had been agreed upon. When the check was presented it was protested for non-payment and returned,

and thereupon an abstract of title and deed were prepared
and attached to a draft, which, when presented, Casto re-
fused to pay and alleged certain objections to the title.
There is evidence which tends to prove that when the con-
tract was entered into Casto was ready, able and willing
to buy and pay for the land.

On behalf of the defendant in error, Ardan, the testimony
proves, or tends to prove, that he was wholly unacquainted
with Casto; that he accepted Casto as a purchaser upon
the faith of representations made by the agent of the Immi-
gration Company as to Casto's financial responsibility,
and that he signed the contract only upon the assurance
of the company that Casto was anxious to buy and would
pay the check for the cash payment as soon as Judge
Smith, of Cumberland county, had approved the deed and
abstract of title; that fearing the check might be lost or de-
stroyed, he deposited it in the Bank of Cartersville, to be
kept there until the papers could be prepared and attached
to it, but by mistake the cashier sent it on before this was
done, so that the check reached the bank in Kansas in
advance of the other papers which should have accom-
panied it, and the check was protested for non-payment;
that in the meantime Mr. Percy, a Virginia attorney, had
prepared a deed and abstract of title and sent them to
Judge Smith for verification, and Judge Smith sent them
to the Immigration Company with the statement that they
were all right; and that these were attached to a sight
draft and sent to Casto's bank, but he declined to accept
upon the ground that the abstract of title was not satis-
factory to his lawyers in Kansas, because the first ab-
stract was not signed by anyone, although it was accom-
panied by Judge Smith's O. K.  To cure this objection
Ardan had another abstract made out by Mr. Percy, and
caused him also to cure certain defects alleged by the
lawyers in Kansas to exist in the title, and these papers

were again sent to Mr. Casto's bank, and were again re-
turned without payment; that a third abstract was made
by Mr. Percy, which was equally unavailing; that Ardan
was always anxious to complete the purchase.

The evidence further tends to prove that when it was
found that Casto would not take the property, Ardan set
on foot inquiries through his counsel, Mr. Percy, as to
the advisability of bringing suit against Casto; that Percy
reported that from such information as he could obtain, he
thought a suit against Casto would be useless.  Mr. Percy
in his testimony, after stating in detail what had been
done with reference to the abstract of title, the prepara-
tion of the deed and the removal of the objections to the
title, was interrupted by counsel for the plaintiff, who ad-
mitted that the objections referred to in a memorandum
prepared and sent to Ardan by Casto's counsel were not
worthy of consideration and did not affect the validity of
the title.  Mr. Percy then goes on to say, that after he
found that Casto would not take the property in accord-
ance with the terms of the contract, he investigated Mr.
Casto's condition with a view of bringing suit, and after a
most exhaustive investigation advised Ardan that a suit
against Casto would not result in securing the specific en-
forcement of the contract, or damages for its breach, as his
financial condition was not of such a character as would
warrant the bringing of a suit, or enable Ardan to collect
the judgment if he obtained one, should Casto desire to
evade the enforcement; that he gave this advice reluctant-
ly, because he knew it was important to Ardan to have the
contract enforced if it could be; and that it was upon the
advice of Mr. Percy that he desisted from bringing action.

When the evidence was before the jury, the plaintiff
asked for certain instructions, which were rejected.

In *Bankers Loan, &c. Co. v. Spindle,* 108 Va. 426, 62 S.
E. 266, it is said: "If a real estate agent or broker, in

pursuance of his contract with a land owner, has found a purchaser ready and willing to comply with the vendor's terms, and has brought the parties together, and they have entered into a valid contract of sale which the vendor can enforce, and the sale has been completed so far as the agent is concerned, he cannot be deprived of his compensation by the voluntary release of the vendee and refusal of the vendor to consummate the sale, without the assent of the agent." And the same doctrine is maintained in *Crockett* v. *Grayson,* 98 Va. 354, 36 S. E. 477, and in *Paschall & Gresham* v. *Gilliss,* 113 Va. 643, 75 S. E. 220.

In *Coleman* v. *Meade,* 13 Bush. (Ky.) 358, it is said: "The true doctrine we take to be this: The broker undertakes to furnish a purchaser, and is bound to act in good faith in representing a person as such, and, when one is presented, the employer is not bound to accept him or to pay the commission, unless he is ready and able to perform the contract on his part according to the terms proposed; but if the principal accepts him, either upon the terms previously proposed, or upon modified terms then agreed upon, and a valid contract is entered into between the principal and the person presented by the broker, the commission is earned." See also *Arents* v. *Casselman,* 110 Va. 509, 66 S. E. 820.

In *Parker* v. *Walker,* 86 Tenn. 566, 8 S. W. 391, it was held, that "A broker who agrees for compensation to procure a purchaser for lands, has earned his commissions when he affects a valid written contract for the sale of lands upon terms and with a purchaser acceptable to the owner. Neither the purchaser's refusal to perform his contract upon grounds not imputable to the broker's fault, nor the voluntary failure of the vendor to compel him to do so, will defeat the broker's claim for commissions." In the course of the opinion Mr. Justice Burton said: "The broker in such case has done all he can do, and all he

undertook to do.  He has produced a purchaser able to comply, or one satisfactory to the seller, for he has accepted him as a purchaser and willing to purchase; for he has freely bound himself by a valid agreement to buy the property.  The subsequent unwillingness to carry out his purchase cannot affect the validity of the agreement by which he has bound himself to take the property.  This assent of the contracting parties, and this valid agreement, having been brought about through the intervention of the agent, completes his obligation, and is all he undertook to do, and just what his principal employed him to do.  If such a purchaser, being thus bound, undertakes to avoid his agreement upon insufficient legal grounds, the vendor may, if he choose, compel a specific performance; but if he elect to release him rather than to incur the expense, or annoyance, or delay of a litigation, he ought not, in equity and justice, make such election at the expense of his broker."

While the authorities we have cited to show that the first instruction correctly states the law as established in this Commonwealth, we are of opinion that instruction No. 2, given to the jury by the court, sufficiently states the principle which it announced, and, therefore, that the refusal to give instruction No. 1 asked for by the plaintiff in error was not prejudicial, and this assignment of error is, therefore, overruled.

We think the second instruction was properly refused, for it renders the seller liable for commissions whether "the failure to carry out the contract was due to the fault of the defendant or of Casto," provided there was no fault upon the part of the plaintiff.  In a case where there is no fault upon the part of the agent nor upon the part of the seller, but the whole fault of the miscarriage lay with the purchaser, we cannot agree that the plaintiff is entitled to his commissions.  His claim rests upon his having pre-

sented a purchaser ready, willing and able to complete the purchase. It is true that in this case a purchaser was found who professed himself ready, able and willing to complete the purchase. As to the truth of these representations the evidence tends to prove that Ardan relied solely upon the statements of the agents of plaintiff in error, he himself having no acquaintance with or knowledge of Casto, except what he derived from them.

If the plaintiff is entitled to recover, it must be for a breach of contract upon the part of the defendant by reason of his having omitted to do that which by his contract he ought to have done, or having done that which by the terms of his contract he should have refrained from doing. The recovery must be based upon some default or misconduct on the part of the defendant.

In *Parker* v. *Walker, supra,* after stating that the broker is entitled to his compensation if he has produced a purchaser able to comply, the opinion proceeds as follows: "If such a purchaser, being thus bound, undertakes to avoid his agreement upon insufficient legal grounds, the vendor may, if he choose, compel a specific performance; but if he elect to release him rather than to incur the expense, or annoyance, or delay of a litigation, he ought not, in equity and justice, to make such election at the expense of his broker." To all of which we give our unqualified assent.

As is said in Walker on the Law of Real Estate Agency, section 464, "Where a broker, under a general contract of employment to sell real estate, obtained a purchaser satisfactory to his principal, who made an enforceable contract of sale, without being induced to do so by any representation of the broker as to the purchaser's responsibility, and without any bad faith on the broker's part, the latter was entitled to commissions, though, without the principal's fault, the vendee failed to perform the con-

tract, solely because of the lack of financial responsibility at the time the contract was executed."

It will be observed that the case just stated was one in which the contract was made between the vendor and the purchaser without any representations on the part of the broker as to the purchaser's responsibility; while in the case before us the proof is that representations as to the purchaser's responsibility were made by the broker and were relied on by the seller. In the same section it is said, that "where a vendor of land is not influenced by misrepresentations of his broker as to the financial condition of his vendee, such misrepresentations do not constitute a ground for refusing to pay the broker's commissions." Citing *Irwin* v. *Mowbray,* 5 N. Y. Supp. 430.

When we speak of misrepresentation we do not mean to say that there is any evidence proving or tending to prove that the plaintiff in error knowingly deceived the defendant in error, but merely that the evidence tends to prove that the plaintiff in error represented to its principal that Casto was a purchaser ready, able and willing to buy, and financially responsible for his contracts.

We are of opinion that the third and fourth instructions were also properly refused.

This brings us to the consideration of a question of grave importance to a proper decision of this case. Ardan having accepted Casto as a purchaser upon the faith of the representations of his financial responsibility made to him by plaintiff in error, and Casto having refused to comply with his contract, was it the duty of Ardan, under the facts disclosed by this record, to bring suit against Casto, either to compel him to perform his contract or to recover damages for its breach, and was that question properly submitted to the jury?

The instruction bearing upon this point, which was given by the court, is as follows:

"If the jury believe from the evidence in this case that the defendant, after the investigation as to whether a suit against Casto would be available to compel him to comply with his contract, *and* was advised by his counsel that a suit would be expensive and useless and would avail him nothing, then he was not bound to bring a suit against Casto, as the law does not compel a man to do a vain and useless thing."

The effect of this instruction was to leave it to the discretion of Ardan's counsel to determine whether or not it was the duty of his client to bring a suit against Casto to compel a compliance with his contract, and this we think was improper. In order to excuse himself from the duty of bringing the suit, an investigation should have been made as to the facts bearing upon the advisability of instituting such an action, and all the facts obtainable upon that question should have been submitted to the jury; and if as a result it should have been made to appear that a suit would have been unavailing, Ardan would have been excused for declining to institute it, for the law does not compel a man to do a vain and useless thing.

We are of opinion that for the error committed with respect to instruction No. 1 given by the court, the judgment should be reversed and the cause remanded for a new trial to be had not in conflict with the views stated in this opinion.

*Reversed.*