## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### CALDWELL AND WIFE V. TANNEHILL.

January 12, 1915.

Absent, Keith, P.

1. BROKERS—*Real Estate Agent—Commissions.*—As a general rule, a real estate broker, to be entitled to his commission, must show that he has completed his undertaking according to its terms, or that its completion was prevented, without his fault, by his principal at a time or under circumstances when the latter had no right to interfere.

2. BROKERS—*Real Estate Agents—Commissions—Case at Bar— Limited Powers.*—Where the authority to a broker to sell land provides that "unless the place is sold or contracted to be sold in writing on or before November 28, 1913, the whole proposition is withdrawn," the broker does not become entitled to his commission by merely producing a customer who is ready, willing and able to purchase. He is required, within the time fixed by the contract, to sell to his customer, or to secure a contract in writing from the customer binding him to purchase upon the terms upon which he was authorized to sell. The refusal of each of the parties to sign a contract prepared by the other, containing terms different from those given to the broker, did not prevent the broker from obtaining from the customer a contract in accordance with said terms, duly signed, and tendering the same to his principal, and until this was done he was not entitled to his commission.

Error to a judgment of the Corporation Court of the city of Staunton in an action of assumpsit. Judgment for the plaintiff. Defendants assign error.

*Reversed.*

The opinion states the case.

*Fitzhugh Elder* and *J. M. Perry,* for the plaintiffs in error.

*Timberlake & Nelson* and *Wm. A. Pratt,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is a writ of error to a judgment rendered in favor of the defendant in error, Tannehill, against the plaintiffs in error, Caldwell and wife, in an action of assumpsit to recover compensation for services as a real estate broker.

The claim sued for is based upon the contention by Mr. Tannehill "that he had produced to his principal a customer who was ready, willing and able to purchase the farm upon the terms fixed by the principal, and that the sale was prevented by the wrongful and arbitrary refusal of the principal to close it on his part."

There is no controversy between the parties as to the amount of compensation, nor as to the customer's ability to purchase the farm. The whole controversy here is, and in the trial court was, whether or not the broker had done all that it was his duty as such broker to do to entitle him to compensation.

By a letter dated November 18, 1913, written by Mr. Caldwell, Mr. Tannehill was authorized to make sale of the farm. That letter and an endorsement upon it extending the time within which the broker was authorized to sell is as follows:

"Referring to our conversation of this morning with reference to sale of 'Caldwallen.' This place is not now and has not been on the market, as you know. Some little while ago I gave you a price, however, of $50,000 on the farm, and as a result of some negotiations between you and your customer, I agreed to shade that price to $40,000. We are not anxious to sell it by any means at that figure, but in view of the fact that you have evidently interested your-

self in finding a purchaser for the property, and in order to be perfectly fair with you, I will allow that price to remain for the next ten (10) days; that is to say, until you have had the opportunity to complete your negotiations with your present customer, provided, however, that even that shall not carry the date beyond November 28, 1913. Please, however, do not construe this as a general option on the place. I do not care to have it under option and it is only in a spirit of friendliness that I give you the time above mentioned to conclude, if possible, your present negotiations. You will understand, of course, that unless the place is sold or contracted to be sold in writing on or before November 28, 1913, the whole proposition is withdrawn and if it comes up again it must come up as new business. In this connection I would be glad if you would not allow the impression to get abroad that this place is upon the market. Such is not the case and I really do not care to part with the property. While the terms mentioned in this letter are understood to be cash, I would be disposed to make some reasonable concession along that line, if necessary. The above price includes the loose straw and the fodder raised on the place this last year, but does not include the ensilage or any other farm product, or personal property of any description.

Yours very truly,

C. R. CALDWELL.

"November 20, 1913.

"I hereby agree to extend the option as stated above until noon, December 3, 1913.          C. R. CALDWELL."

The customer whom the broker claims to have found as ready, willing and able to purchase the property upon the terms upon which he was authorized to sell, did not enter into a written agreement to purchase, either with the broker or the owner, and no sale was made.

The general rule is that a real estate broker. to be entitled to compensation, must show that he has completed his undertaking according to its terms, or that its completion was prevented without his fault by his principal at a time or under circumstances when the latter had no right to interfere. 2 Mechem on Agency, section 2427; 2 Skyles & Clark on Agency, section 1770.

That rule is stated as follows in *Crockett* v. *Grayson*, 98 Va. 354, 357, 36 S. E. 477, 478: "A real estate broker, to be entitled to his commissions, must complete the sale. He must find a purchaser in a situation ready and willing to complete the purchase upon terms agreed upon before he is entitled to his commissions. When he has found such purchaser, who has entered into a valid contract, his right to compensation cannot be defeated by the fault of the seller by his misrepresentation, or by his whimsical or unreasonable refusal to comply with the contract." The rule as thus laid down has been reiterated and approved in other cases, among them in *Vaughan* v. *Pleasonton*, 112 Va. 508, 71 S. E. 529, and in *Middle Atlantic Co.* v *Ardan*, 115 Va. 148, 155, 78 S. E. 588.

In the case under consideration the letter quoted, which was the broker's authority to sell, contained special stipulations. It expressly provided, among other things, "that unless the place is sold or contracted to be sold in writing on or before November 28, 1913, the whole proposition is withdrawn and if it comes up again it must come up as new business." The time within which the authority given could be exercised was extended until December 3, following. The letter was not a mere authority to find a purchaser, but in order to comply with his undertaking the farm must be sold or contracted to be sold in writing within the time named. Under such authority the broker does not become entitled to his commissions by merely producing a customer who is ready, willing and able to purchase unless

a sale or contract to sell is actually entered into by the owner of the land.

"A broker," says Mechem on Agency, section 2428, "employed to sell real estate, may be authorized and required by the terms of his undertaking not only to find a purchaser, but even to conclude an actual transfer, or at least to procure from the purchaser a valid written agreement binding him to purchase upon the terms specified; and where this is the undertaking the broker has not earned his commission until he has performed it, or the principal has accepted a less complete performance."

In 2 Skyles & Clark on Agency, section 772, it is said: "If the broker is specially employed to negotiate for his principal the purchase, sale or exchange of real estate, at a fixed sum, his services will not be complete until a valid written contract binding on both vendor and purchaser has been entered into to purchase, sell or exchange on the terms specified, unless this condition is waived by the principal; but until such contract has been made or waived, the broker has not earned his commissions. Or if it be agreed between the broker and the owner that such contract of sale shall be in writing, then no commission can be collected until such written contract is furnished."

The statement of these text-writers seems to be sustained by the cases cited in the notes, and in note *Pfanz* v. *Humburg,* 29 L. R. A. (N. S) 533.

The evidence shows or tends to show that on the first of December, within the time named as extended, in which the broker was authorized to sell or procure in writing a contract of sale, he brought to his principal for execution an unsigned agreement prepared by his customer's counsel, whose terms differed from those upon which the broker was authorized to sell, in this, that it provided for the payment of the purchase price upon credits running over a period of five years instead of for cash. The owner de-

clined to sign that paper and informed the broker that he would prepare a paper himself. He did so, but the terms of the paper differed from those upon which he had authorized the broker to sell in several particulars, the most material of which was that he would convey with special warranty instead of with general warranty. When that paper was carried by the broker to his customer, he declined to sign it, saying that it was not according to the way he understood things and that he did not intend to have anything to do with it. This was on the morning of the 2nd of December. Further efforts were made by the broker to induce his principal and his customer to enter into an agreement for the sale and purchase of the farm. There was evidence tending to show that the principal was anxious to avoid selling the farm, and that while the customer had made arrangements for money to pay all cash, he did not wish to do so if he could procure a contract which would give time for the payment of a large part of the purchase price, and that the broker informed his principal that while his customer was anxious to get time on part of the purchase price, he could and would pay all cash. On the other hand the principal informed the broker that he would convey with general warranty. While both the principal and the customer were in the city of Staunton on the first and second days of December, they were never brought together, and never saw each other nor had any communications with each other, but the efforts to bring about an agreement between them were made by the broker alone, except that the customer's attorney saw the principal and sought to induce him to agree to sell the farm partly on credit.

The time within which the broker was authorized to sell expired at noon on the 3rd day of December without a sale or contract for sale having been made. What the evidence tended to prove has been sufficiently stated to enable the

court to pass upon the propriety of the trial court's action in giving and refusing instructions.

The court, on motion of the plaintiff, gave the following instructions, each of which was objected to by the defendant:

"A. The court instructs the jury that the entire duty of the plaintiff under his contract with the defendants was to find and report to the defendants a person who was ready, willing and able to purchase their property at the price and upon the terms which they had designated; and if the jury believe from the evidence that the plaintiff performed this duty, they must find a verdict in his favor for the amount of his agreed compensation, viz.: $1,500.00, with interest from December 2, 1913.

"B. The court instructs the jury that when a real estate agent has found and reported to his employer a purchaser in a situation ready, willing and able to purchase the property upon the terms fixed by the owner, the owner cannot defeat the agent's claim for commission by an arbitrary or whimsical refusal to consummate the sale or by insisting upon terms other than those upon which he authorized the agent to sell.

"C. The court instructs the jury that if they believe from the evidence in this case that the plaintiff found and reported to the defendants a purchaser in the person of Mr. E. A. Dudley, who was in a situation ready, willing and able to purchase the property of the defendants upon the terms fixed by the defendants, and that the purchase of said property by said purchaser was prevented by the defendants insisting upon the injection of new or additional terms of sale into the contract between themselves and said purchaser, the jury must find a verdict in favor of the plaintiff.

"E. The court instructs the jury that where reference is made in the instructions in this case to the duty of a real

estate agent to actually make a sale before being entitled to his commissions, the court means to tell the jury that sale by a real estate agent is actually made as between his employer and himself when he has found and reported to his employer a purchaser who is in a situation ready, willing and able to buy upon the terms fixed by the owner."

The court refused to give the following instruction asked for by the defendants:

"The court instructs the jury that, under the writing of November 18, 1913, extended by notation thereon to December 3, 1913, the plaintiff, Tannehill, before he is entitled to recover anything in this cause must show by a preponderance of the evidence, either that he completed a sale of the land herein mentioned, at the price and upon the terms and conditions of said writing, or that he produced to the defendant a party who evidenced his willingness to buy at the price and upon the terms and conditions of said writing, by signing a paper or proposition containing said price and terms and conditions.

"The court instructs the jury that a real estate broker to be entitled to compensation must complete the sale. He must find a purchaser in a situation ready and willing to complete the purchase upon the terms agreed upon before he is entitled to his commissions. When he has found such a purchaser, who has entered into a valid contract, his right to compensation cannot be defeated by the fault of the seller, by his misrepresentation, or by his whimsical or unreasonable refusal to comply with his contract."

The said instructions given for the plaintiff ignore the fact that the broker was acting under a special authority, which required him to sell to his customer or to secure a contract in writing from his customer binding him to purchase upon the terms upon which he was authorized to sell. The broker had not performed his undertaking until such sale was made or such written contract for its sale was

procured, unless his principal has waived that requirement, or has prevented the broker from procuring a written contract to purchase from his customer.   There is no evidence tending to show that the principal prevented the broker from selling or procuring a contract in writing binding his customer to purchase.   If the customer was willing to purchase upon the terms upon which the broker was authorized to sell, all that was necessary for the broker to do to fully perform his undertaking so as to become entitled to his commissions was to procure such a contract from his customer, who it is conceded was financially able to make the purchase, and deliver that contract to his principal. The action of the seller in refusing to sign the agreement prepared by the counsel of the broker's customer, and the seller's preparation of a written contract for the broker's customer to consider or to sign (neither of which papers were in accordance with the terms upon which the broker was authorized to sell) did not prevent the broker from securing such a contract of sale as his undertaking required him to secure, nor did the seller's action in reference to such papers (since neither was executed by the other) release the broker from his undertaking to secure such a contract from his customer.

The broker not having sold or procured from his customer a written contract binding him to purchase, and not having been prevented by his principal from securing such contract within the time named or released from so doing, he did not do all that his undertaking required him to do and was not, therefore, entitled to the commissions sued for; for it is well settled that the broker must show that he has completed his undertaking according to its terms, or that its completion was prevented without his fault by his principal at a time or under circumstances when the latter had no right to interfere.   2 Mechem on Agency,

section 2427 (2nd Ed.) ; Clark & Skyles on Agency, section 770.

It follows from what has been said that the court erred in giving instructions A, B, C, and E., and in refusing to give the instructions asked for by the defendant as set out in bill of exception No. 1.

The judgment complained of must be reversed, the verdict set aside, and the cause remanded for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed.*