# Wytheville.

## E. M. TERRY v. F. W. BISHOP AND J. D. FRY, PARTNERS, TRADING AS BISHOP-FRY COMPANY, ET AL.

### June 15, 1922.

1. NEW TRIALS—*Verdict against the Evidence or without Evidence to Support It—When Error to Set Verdict Aside.*—If there is evidence before the jury, of a character not physically impossible or inherently incredible, which, if credited by the jury, is sufficient to sustain the verdict, it is reversible error in the trial court to set it aside.

2. BROKERS—*Real Estate Brokers—When Broker Entitled to Commissions—General Rule.*—Where there is a contract between a landowner and a real estate agent, by which the real estate agent is empowered by the landowner to sell his property, the liability of the landowner to the agent for commissions depends upon the question whether the agent, at the time fixed for the completion of a contract of sale which the agent relies on as entitling him to commissions, has produced a purchaser ready, willing and able to comply with the landowner's terms of sale as stipulated in the landowner's contract, or as varied by mutual consent.

3. BROKERS—*Real Estate Brokers—When Broker Entitled to Commissions—Completion of Contract of Sale.*—The actual completion of a contract of sale is not a condition precedent to the right of a real estate broker to commissions. This is true where the contract between the owner and the agent provides for a completed sale, equally as where an executory contract of sale merely is provided for. But, in both cases alike, the agent must produce, at the time fixed in the contract of sale for its completion, a purchaser ready, willing and able to comply with the owner's terms of sale.

4. BROKERS—*Real Estate Brokers—When Broker Entitled to Commissions—Completion of Contract of Sale—Case at Bar.*—In the instant case, the contract of sale reported to the defendant, the landowner, and relied on by the plaintiffs, the brokers, as in performance on their part of their contract with the defendant, was the agreement of a purchaser to complete the executory contract of sale to him "at any time" the defendant might succeed in removing certain clouds from the title by suit for that purpose. Before the expiration of that time the purchaser announced his unwillingness to comply with any terms of purchase and repudiated the contract of sale *in toto.*

*Held:* That plaintiffs did not produce a purchaser ready and willing to comply with the terms of sale at the requisite time to entitle them to recover from the defendant.

5. BROKERS—*Real Estate Brokers—Commissions—Purchaser Not Willing to Complete Contract of Sale.*—However able a purchaser may be to complete a contract of sale made by him with real estate brokers, if he was not willing to complete the contract when the time arrived therefor, the broker is not entitled to recover his commissions from the landowner.

Error to a judgment of the Circuit Court of Halifax county, in an action of assumpsit. Judgment for plaintiffs. Defendant assigns error.

*Reversed and final judgment.*

This is an action of trespass on the case in assumpsit brought by the defendants in error (who will be hereinafter referred to as plaintiffs, or by their individual names), real estate agents, against the plaintiff in error (who will be hereinafter referred to as defendant, or by his individual name), to recover certain commissions claimed by the plaintiffs as owing to them by the defendant on a perfected sale of real estate in accordance with the agreement between the parties.

There was a verdict for the defendant, Terry, which the court below set aside. Thereupon the court entered judgment for the plaintiffs, and the defendant brings error.

The declaration contains the common counts in assumpsit and also three special counts declaring upon the alleged special contract in writing relied on by the plaintiffs.

The special contract in writing is as follows:

"South Boston, Va., Oct. 18, 1919·

"Bishop-Fry Co., Real Estate Agents,

"South Boston, Va.

"I hereby place my property containing about 1,800 acres, more or less, situated and described, as follows:

In Lunenburg county, Va., between Victoria and Kenbridge, and known as Beach Forest tract, and a part of the Guy Tuggle and Davis tracts, in your hands for sale, and I hereby authorize and empower you to sell upon the terms hereinafter set out, and to enter into and execute all necessary contracts with the purchaser, to carry out the sale. I agree to accept for the said property the sum of fifteen dollars ($15) per acre, terms to be not less than one-fourth cash, the balance in three equal installments, payable on or before one, two and three years, from the date of sale. Deferred payments bearing 6% interest, and secured by deed of trust on the entire property, or at such smaller price as may be acceptable to me, and in consideration of the services to be performed by the said Bishop-Fry Company in effecting a sale of this property, I agree if the said property is sold by them, within fifteen days, to pay them 10% of the selling price as their commission, or compensation for such service; said commission to be paid from the first payment of the purchaser.

"This agreement is in force and binding on me fifteen days. Should I sell the land to any one whose attention as a purchaser has been called to the said property during the fifteen days, this agreement will be in force and binding on me.

"E. M. Terry (Seal)."

"The life of this contract is fifteen days only, after which time it will become cancel."

The plaintiffs succeeded in making an executory contract of sale of the land to one S. W. Minor within the fifteen days specified in the said special contract, which was evidenced by the following writing:

"Received of S. W. Minor, one hundred dollars ($100.00), in part payment of a certain tract of land,

situated in Lunenburg county, Virginia, on the south side of the Victoria-Kenbridge road, containing about 1,700 acres, more or less, it being the unsold portion of that tract of land, or tracts of land, known as the 'Beech Forest and Guy Tuggle and Davis Tract.' The purchase price of the aforesaid land is fifteen dollars ($15.00) per acre, payable one-fourth cash and the balance in equal installments on or before one, two and three years after date.

"It is understood and agreed that the one-fourth cash payment is due and payable upon the tender of a good and sufficient deed for said property with full covenants of warranty, free and clear of all encumbrances, the taxes on said lands for 1919 to be paid by the present owner of the land, E. M. Terry, of South Boston, Virginia.

"This contract and agreement and sale made through Bishop-Fry Company, real estate agents of South Boston, Virginia, under assigned option held by them.

"Witness our hands and seals in duplicate this 21st day of October, 1919.

"E. M. Terry (Seal)
"By Bishop-Fry Co.
"By F. W. Bishop
"S. W. Minor (Seal)."

It will be observed that this writing contains no provision fixing the day for completing the contract of sale.

Minor testified before the jury, to the effect, that when he signed the writing just mentioned he had an understanding with and expected the Atlantic Coast Realty Company to finance the transaction, and that he was to have a third and that company two-thirds of any profits. That he turned the matter over to that company as soon as said writing was executed

and the company had the title examined and found certain clouds upon it which the plaintiffs, the real estate agents, however, claimed constituted no real defect in the title. But that the realty company declined to put up any purchase money until the clouds were removed; and that, by mutual consent of the real estate agents, Minor and the realty company, the time for the completion of the contract of sale was postponed pending the ascertainment of what could or would be done. about removing the clouds from the title, no definite time for the completion being named. There was other testimony to the same effect. The testimony for the defendant, Terry, was to the effect, however, that he had no communication with Minor or with the realty company direct, but solely through the plaintiff, Bishop. And Terry testified that the writing signed by Minor and the plaintiff real estate agents was never delivered to him, nor any copy of it, and that he at no time accepted that contract of sale as the performance on the part of the plaintiffs of the special contract with him aforesaid.

On the contrary, the testimony of the defendant, Terry, before the jury was express that as the plaintiff, Bishop, reported the matter to Terry, after the objections to the title aforesaid were made, Minor added to the written contract of sale to him the verbal agreement that, if Terry would institute a suit to remove the cloud from the title, Minor "was ready to take it" (the real estate) "at any time" that the title was cleared.

The testimony of and for the defendant, Terry, is to the effect that he accordingly instituted a suit to remove the aforesaid clouds from the title; that he took .that course, rather than bring a suit against Minor for specific performance of the contract between

him and the plaintiff real estate agents aforesaid, at the special instance and request of the plaintiff, Bishop, who was acting for the other plaintiffs in the matter, because, as Bishop reported to Terry, and as Minor admitted in his testimony was true, Minor, being a president of a bank, was very averse to the rights of the plaintiffs to recover commissions of the defendant, Terry, being tested by means of a suit against Minor for specific performance of his contract; that Minor did not want to be sued, because it might affect his credit and that of his bank; and that in the suit which Terry brought he obtained a decree removing the clouds from the title to the satisfaction of Minor so far as the decree of the lower court was concerned; but that Minor then refused to complete and repudiated the contract he had signed as further binding upon him, on the ground that he had never agreed to take the property "at any time," as Bishop had reported his agreement as aforesaid, taking the position that he was unwilling to wait for an appeal to the Supreme Court to be refused, or, if granted, to be decided, in order to ascertain whether the clouds aforesaid had been in truth removed.   The reasons for this action on Minor's part are testified to by him, but as they are immaterial, they need not be stated here.

No purchase money was ever paid to Terry, nor any obligations, or deed of trust, given him, such as provided for in the special contract aforesaid between him and the plaintiffs.

The appeal referred to was in fact allowed by the appellate court, and the decree appealed from was affirmed.

The jury were correctly instructed to the effect that if they believed that the completion of the contract of sale was prevented solely by the inability of the

defendant, Terry, to make a clear record title to the land, they should find for the plaintiffs.

Other pertinent matters are referred to in the opinion.

*B. W. Leigh* and *Jas. H. Guthrie*, for the plaintiff in error.

*John Martin* and *William Leigh, Jr.*, for the defendants in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court.

In the view we take of the case, we need pass upon only one of the questions raised by the assignments of error, and that is this:

1. Did the court err in setting aside the verdict of the jury in favor of the defendant?

The question must be answered in the affirmative.

[1] The rule upon this subject is, of course, well understood. If there was evidence before the jury, of a character not physically impossible or inherently incredible, which, if credited by the jury, was sufficient to sustain the verdict, it was reversible error in the trial court to set it aside.

In accordance with the evidence for the defendant, the contract, on which the action of the plaintiffs was based, did not obligate the defendant to pay the real estate agents' commissions for obtaining for the landowner an executory contract of sale, but only for the obtaining of a completed or perfected contract of sale (*i. e.*, a contract closed by becoming embodied in the contemplated deed and deed of trust and other papers expected to be executed at the time fixed for the com-

pletion of the executory contract).    There was some conflict between the testimony for the respective parties on this subject, but there was ample testimony, of a character which the jury were free to believe, which, if believed by them, was sufficient to sustain the verdict on this point.    As the jury, therefore, may have so found this fact, the court below could not have properly reached a conclusion of fact to the contrary, nor can this court.    And the case turns upon this fact.

[2] Where such is the contract between the landowner and the real estate agent, the liability of the landowner to the agent for commissions depends upon the question whether the agent, at the time fixed for the completion of a contract of sale which the agent relies on as entitling him to commissions, has produced a purchaser ready, willing and able to comply with the landowner's terms of sale as stipulated in the landowner's contract, or as varied by mutual consent. *Crockett* v. *Grayson*, 98 Va. 354, 36 S. E. 477; *Murray* v. *Rickard*, 103 Va. 132, 48 S. E. 871.    The case of *Bankers' Loan Co.* v. *Spindle*, 108 Va. 426, 62 S. E. 266, relied on for the plaintiffs, is not at all in conflict with this holding, but expressly recognizes the correctness of the doctrine just stated.

[3] It is very true that, as argued for plaintiffs, the actual completion of the contract of sale is not a condition precedent to the right of the agent to commissions.    This is true where the contract between the owner and the agent provides for a completed contract of sale, equally as where an executory contract of sale merely is provided for.    But, in both cases alike, the agent must produce, at the time fixed in the contract of sale for its completion, a purchaser ready, willing and able to comply with the owner's terms of sale aforesaid.

[4] The evidence for the defendant, Terry, is to the effect that the contract of sale reported to the defendant and relied on by the plaintiffs as in performance on their part of their contract with the defendant, was the agreement of Minor to complete the executory contract of sale to him "at any time" the defendant might succeed in removing the clouds from the title by suit for that purpose. That was the contract of sale which the plaintiffs represented that they had, obtained and on which representation the defendant relied and acted to his detriment in going to the expense of bringing the suit which he instituted, instead of a suit against Minor for specific performance of Minor's written agreement with the real estate agents. There is conflict in the evidence regarding these matters, but the verdict settled this conflict and concluded the fact that this modified contract with Minor was the contract of sale on which the plaintiffs had to rely in this action. That contract, in effect, postponed the time for the completion of it until such time in the future as might be required, in the exercise of due diligence, to complete the litigation necessary to perfect the title of record. The uncontroverted evidence shows that before the expiration of that time (i. e., before the time fixed, as aforesaid, for the completion of the contract of sale), the purchaser announced his unwillingness to comply with any terms of purchase and repudiated the contract of sale *in toto.* Subsequently, the defendant succeeded, in the suit instituted by him, at and in accordance with the request of plaintiffs themselves, for the purpose of removing the clouds from the title to which there had been objection, in obtaining a decree of the circuit court, and subsequently a decree of the Supreme Court of Appeals, affirming the decree of the lower court, which removed

the alleged clouds upon the title.   Then arrived the time fixed, as aforesaid, for the completion of the aforesaid contract of sale, and no purchaser was then produced or could be produced by the plaintiffs. Such being the case, it is obvious that the plaintiffs did not produce a purchaser ready and willing to comply with the terms of sale at the requisite time to entitle them to recover anything udner their contract with the defendant.

[5] There was testimony before the jury tending to show that the purchaser, Minor, was not financially *able* to complete the contract of sale even at the time he repudiated it, and that he repudiated it for that reason, and not because of any alleged cloud upon the title; but it is unnecessary to consider those questions, as it is clear that however *able*, he was not *willing* to complete the contract of sale when the time arrived therefor.

The judgment under review will, therefore, be reversed, and final judgment will be entered for the defendant, with costs.

*Reversed and final judgment.*