# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉,

## AMELIA BEAR v. T. D. PARRISH AND N. A. WARD.

### September 29, 1927.

1. REAL ESTATE BROKERS—*When Entitled to Compensation—Purchaser Ready and Willing to Complete Purchase.*—Where a real estate broker has found a purchaser who is ready and willing to complete the purchase upon terms agreed upon, and who has entered into a valid contract, the agent is entitled to his commissions, and his right to compensation cannot be defeated by the fault of the seller, by his misrepresentations or by his whimsical or unreasonable refusal to comply with his contract.

2. REAL ESTATE BROKERS—*Whether Owner Guarantees Title to Real Estate Broker—Presumption as to Title—Rebuttal of Presumption.*—An owner of property does not guarantee his title to the property to a real estate broker in whose hands he places the property for sale. In making their contracts and in producing a purchaser, a real estate agent may, as a general rule, act upon the assumption that the owner can tender a title free from infirmities, and there is an implied contract that he has the ability to confer upon a purchaser a perfect title to that which he offers for sale. This presumption, however, is not conclusive, and will not be indulged in when contradicted by the evidence in the particular case.

3. REAL ESTATE BROKERS—*Misrepresentations as to Dimensions of Lot—Presumption—Case at Bar.*—In the instant case, an action by real estate brokers for compensation, the evidence of the plaintiffs established that the failure to make the sale was not caused by a defect in the title, but a misrepresentation of the depth of the lot. The purchasers refused to complete the sale because upon survey it appeared that three feet six inches in rear of the building was not included in the owner's lot. Whether the owner authorized the agents to include this three feet six inches was a matter of proof. There was evidence tending to prove that the owner did not know whether the three feet six inches was included in her lot and so told one of the agents, who says that he concluded that it was a part of the lot because of a balcony over the space.

*Held:* That there was a conflict of evidence on this important point in the plaintiffs' case, and it should have been submitted to the

jury under proper instruction, as no presumption arises from the real estate brokers' contract with the owner as to the dimensions of the lot.

4. REAL ESTATE BROKERS—*Right to Compensation—Commissions Contingent—Misrepresentation of Seller.*—The commissions of a real estate broker are contingent, and before he is entitled to same he must prove not only that he had produced a purchaser ready and willing to buy upon the terms agreed upon, but that the sale was not concluded by reason of some fault or misrepresentation of the seller.

5. REAL ESTATE BROKERS—*Action for Commissions—Instructions.*—In the instant case, an action by real estate brokers for commissions, an instruction for plaintiffs told the jury that if they believed the plaintiffs had produced a purchaser who was ready, able and willing to buy upon the terms agreed upon, they must find for the plaintiffs. The instruction did not point out any fault or misrepresentation of the owner that defeated the sale, but conclusively presumed a misrepresentation on her part. Thus the instruction was an abstract proposition of law, and left out one of the essentials to the brokers' recovery.

   *Held:* Reversible error.

6. REAL ESTATE BROKERS—*Action for Commissions—Instructions—Defendant's Theory—Conflict in the Evidence—Case at Bar.*—In the instant case, an action by real estate brokers for commissions, there was a direct conflict in the evidence upon what the plaintiffs agreed to do, in order to entitle them to commissions. This conflict was for the jury upon the evidence and all just inferences to be drawn therefrom and the defendant was entitled to an instruction on this issue, presenting her theory of her defense.

Error to a judgment of the Hustings Court, Part II, of the city of Richmond, in an action of assumpsit. Judgment for plaintiffs. Defendant assigns error.

*Reversed and remanded.*

The opinion states the case.

*Melvin Flegenheimer* and *Allen G. Collins,* for the plaintiff in error.

*O'Flaherty & Pitt* and *Joe T. Mizell,* for the defendants in error.

CHRISTIAN, J., delivered the opinion of the court.

Amelia Bear was the owner of No. 616 E. Franklin street and the lot upon which it stands in the city of Richmond. N. A. Ward, a real estate agent, called upon Miss Bear, and told her that he had a customer for her property who wanted a price for same. He asked her if the concrete space in rear of her building was part of her lot. She replied that Wallerstein, from whom she purchased the lot, told her at the time she purchased, that the concrete space was part of her lot, and she had put up the balcony over it. After discussion of the price, she finally agreed to sell for thirty thousand dollars cash. No mention of compensation to him was made nor any terms of the sale agreed upon between them.

Ward left after this conversation to confer with his customer. Some days elapsed. Then Ward called again on Miss Bear, and presented to her for acceptance the following offer of purchase, that had been prepared by him in conference with his customer without consultation with her:

"I hereby agree to give thirty thousand dollars ($30,000.00), payable cash subject to present mortgage, provided the alleys on each side of No. 616 E. Franklin are not to be or will not be closed for No. 616 E. Franklin street and lot upon which it stands, provided the title is free from valid objections; to be settled for within thirty days from date hereof. Actual possession of premises subject to lease of present tenant; taxes, insurance and rents to be prorated as of day of settlement. This offer to be binding for thirty days and do pay down the sum of $100.00, the receipt of which is hereby acknowledged, to bind sale.

"Witness my hand and seal at Richmond, Virginia, this 5th day of May, 1924.

"J. N. WALKER (Seal)
"for Mutual Ins. Co. of Richmond, Va."

Miss Bear refused to accept the above offer, but being anxious to sell, after waiting some days, she sent her brother, B. J. Bear, to see T. D. Parrish, another real estate agent who was associated with Ward, for the purpose of concluding the sale. Parrish says J. N. Walker authorized him over the phone to strike out the sentence, "provided the alleys on each side of No. 616 E. Franklin are not to be or will not be closed." Ward testifies that in a conference with J. N. and J. L. Walker and Throckmorton, officers of the insurance company, he told them Miss Bear did not control the alleys, but upon his assurance that the rear space could not be closed, they concluded that as the rear space had been open a long time they would take the property. The above named officers were examined upon the trial, and their testimony upon this alteration is rather vague. However, according to Parrish, after Bear had agreed to pay usual commissions, the sentence above mentioned was stricken from the offer, and the following acceptance written thereon:

"I hereby accept the above offer, and agree to pay regular commission.

"B. J. BEAR (Seal)
"Agent for Amelia Bear."

Parrish kept the contract, and the earnest money; had the title examined, which was found free from objection, but the attorney suggested a survey. The survey disclosed that the three feet six inches in rear of the building was not included in No. 616 E. Franklin street. Thereupon Parrish and Ward surrendered the contract and check to said officers, who declared the deal off.

Just before the option expired Miss Bear called upon
Parrish to produce the deed for her signature, when
she was informed that there was a defect in her title,
because the three feet six inches was not included in
the lot, and the purchaser had refused to take the
property, and demanded that she pay $700.00 com-
missions. This she refused to do.

Then Parrish and Ward brought an action against
Miss Bear for $700.00, and they filed a declaration in
assumpsit containing the common counts, to which
the defendant, Miss Bear, pled the general issue and
filed four grounds of defense, viz., (1) that there had
not been executed any valid written contract binding
on both the vendor and purchaser to purchase or sell
on terms specified; (2) that complainants had not
procured a purchaser, ready, willing and able to com-
plete a purchase upon the terms authorized by the
defendant; (3) that there had not been a consummated
sale of the real estate; (4) that the complainants
waived any right to a commission if they ever had any.
Upon the trial there was a verdict for the complainants,
and a motion to set it aside was overruled by the trial
court, and judgment entered thereon. The defendant
excepted to the ruling of the court in giving the only
instruction for the plaintiffs and in refusing several
instructions offered by her. The case is before us for
review of these alleged errors.

[1] The plaintiffs based their claim upon the well
established rule of law, "That where a real estate
broker has found a purchaser who is ready and willing
to complete the purchase upon terms agreed upon,
and who has entered into a valid contract, the agent
is entitled to his commissions, and his right to com-
pensation cannot be defeated by the fault of the seller,
by his misrepresentations or by his whimsical or un-

reasonable refusal to comply with his contract." *Crockett* v. *Grayson*, 98 Va. 357, 36 S. E. 477, 478.

The plaintiffs' instruction told the jury that if they believed the plaintiffs had produced a purchaser who was ready, able and willing to buy upon the terms agreed upon, they must find for the plaintiffs. This was the only instruction given for the plaintiffs. It did not point out the fault or misrepresentation of Miss Bear that defeated the sale. It conclusively presumed a misrepresentation on her part.

[2] This instruction is based upon the theory that the seller guarantees his title to the agent. This is not the law. The correct rule is this: In making their contracts and in producing a purchaser, a real estate agent may, as a general rule, act upon the assumption that the owner can tender a title free from infirmities, and there is an implied contract that he has the ability to confer upon a purchaser a perfect title to that which he offers for sale. This presumption, however, is not conclusive, and will not be indulged in when contradicted by the evidence in the particular case. *Leonard* v. *Vaughan & Co.*, 117 Va. 516, 85 S. E. 471, L. R. A. 1915E, 714.

[3, 4] But in this case, according to the evidence of the plaintiffs, a defect in the title was not the cause of the failure of the sale, but a misrepresentation of the depth of the lot. No presumption arises from the agency contract as to the dimensions of the lot. Whether Miss Bear authorized Ward to include the three feet in No. 616 E. Franklin street and the lot on which it stands was a matter of proof. There is evidence that tends to prove that Miss Bear did not know whether the three feet was included in her lot, and this was told to Ward, who says he did not include it in the written contract because he saw the balcony

over the space and concluded that it was a part of the lot.   There was a conflict of evidence on this important point in the plaintiffs' case, and it should have been submitted to the jury under proper instruction.   The commissions of a real estate broker are contingent, and before he is entitled to same he must prove not only that he had produced a purchaser ready and willing to buy upon the terms agreed upon but that the sale was not concluded by reason of some fault or misrepresentation of the seller.   The instruction of the plaintiffs was an abstract proposition of law, and left out the other essential to their right of recovery, therefore, was erroneous.   Hence the verdict of the jury based thereon will have to be annulled, the judgment set aside and the case remanded for a new trial.

Since there must be a new trial of this case, it is proper that we consider generally the grounds of defense of the defendant without comment or discussion of the evidence.

[5, 6] Contracts between the owner and real estate agent, as in this case, are informal and the terms are generally implied from the conduct and words of the parties.   Such contracts may be (as it is generally) to produce a purchaser ready and willing to purchase upon terms agreed on between the parties, or it may be to consummate the sale to the purchaser he produces. There was a direct conflict in the evidence in this case upon what the plaintiffs agreed to do in order to entitle them to commissions.   This conflict was for the jury upon the evidence and all just inferences to be drawn therefrom, and the defendant was entitled to an instruction on this issue.

Whether or not the written offer procured by the real estate agent in this case was for the property which Miss Bear authorized him to sell, and embraced

the terms she authorized him to make, is a question of fact for the jury to determine.

In an action of this nature the defendant had the right to attack the validity of the contract; to show the real estate agent was not entitled to commissions; that the sale failed without fault on her part, and any other matter that tends to prove she was not liable to the plaintiffs, and if upon a new trial there is evidence of her defenses instructions should be given to jury presenting her theory of her defense.

For the reasons above set forth, the judgment of the trial court is reversed and the case remanded for a new trial to be had not contrary to the views of the law herein expressed.

*Reversed and remanded.*