# Richmond

## Mildred E. Hudson v. Luther W. Galyean, doing business as Luther W. Galyean Land Company.

April 13, 1942.

Record No. 2504.

Present, All the Justices.

The opinion states the case.

*L. E. Lindsay*, for the plaintiff in error.

*Horace Sutherland* and *Price Goodson*, for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This is a proceeding by notice of motion brought by Luther W. Galyean, plaintiff, to recover of Mildred E. Hudson, defendant, the sum of $500, compensation alleged to be due plaintiff for procuring a purchaser for a tract of land owned by defendant. There was a trial by a jury, which resulted in a verdict and judgment for the plaintiff and the defendant assigns error.

The plaintiff who was a duly licensed real estate broker, entered into a written contract with the defendant to sell her farm, consisting of eighty acres, at public auction. This contract bore date June 19, 1940, and reads in part as follows:

"Party of the first part agrees to confirm entire sale provided the property herein at said sale shall bring the sum of $6,000 or over; and further agrees to set a minimum price upon each lot or unit after the same has been subdivided into lots or units suitable for sale, the total of which shall not exceed $————, and hereby expressly gives the party of the second part the authority to confirm the sale of any lot or unit that shall bring the price set upon such unit or lot.

"It is further understood and agreed that in the event the property or any part or unit of the same does not bring the required amount or over, it cannot be confirmed by the party of the second part and no commissions are to be paid, only expenses by the party of the first part as herein agreed upon. But if any portion of the land is sold and confirmed by the party of the first part under the above stipulated price, then the commissions are to be paid on that part, only under the following terms and conditions, to-wit. That the said party of the second part is to receive for its labor of offering or selling said land ten per cent and expenses of said sale, agreed amount to be paid by the party of the first part to party of the second part on day of sale. * * *

" * * * * * * * *

"Terms of sale are to be ¼ cash balance 1-2-3-4-5 years with interest on deferred payments at the rate of six per cent per annum, payable annually."

On the 6th day of July, 1940, plaintiff conducted an auction sale on the premises, at which sale one W. G. How-

lett was the highest bidder, his bid being $5,000. On this date Howlett and wife executed the following:

"This is to certify that I have this day bought through the Luther W. Galyean Land Company the following described property, to-wit: 80 acres more or less, one 6 room house, the Alfred Hudson farm, for which I promise to pay $5,000 on the following terms: $1250.00 cash, the balance at the rate of 1, 2, 3, 4, 5 years, and to secure said payments I hereby assign to them all of my property, real and personal, waiving especially any rights of homestead exemptions, and the payment of which I hereby bind myself, my heirs, executors and administrators.

"Witness my hand and seal this July 6th, 1940.

"NAME      WALTER G. HOWLETT     (SEAL)

    ADDRESS            Hillsville, Va.

          SADIE L. HOWLETT"

The record fails to disclose any compliance upon the part of Howlett in regard to the cash payment required in the contract. It is, however, admitted in the brief of plaintiff that "Howlett did tell Mrs. Hudson some two or three days after the date of the sale that he could not take the property unless the title was made good and that he had found out that there was a defect in the title." Thus the matter rested until the 15th day of July, 1940, when defendant signed a written acceptance of Howlett's bid of $5,000. The record fails to show any action upon the part of Howlett in regard to the matter until the 25th day of July, 1940, when he wrote a letter to defendant, withdrawing his bid on the property. Howlett's refusal to perform his contract is based upon the contention that the title was defective.

It is the contention of plaintiff that he is due the sum of five hundred dollars, by reason of the fact that in Howlett he produced a purchaser of the property who was able, willing and ready to comply with his contract of purchase and

was only prevented from doing so by reason of a defect in defendant's title. The defendant contends that Howlett was nòt a purchaser who was ready, able and willing to complete the purchase upon the terms agreed upon. It is further contended by defendant that the title to the land is free of any defect.

Upon the refusal of defendant to pay the commissions alleged to be due plaintiff, he brought this action at law.

In the view we take of the case, it is only necessary to pass upon one of the assignments of error, viz: Did the court err in sustaining the motion of plaintiff to strike out the written statement of defendant which was agreed to be read to the jury?

Upon the trial of the case, plaintiff, testifying as a witness in his own behalf, stated that on July 6th, the day of the sale, the defendant verbally accepted the bid of Howlett; that Howlett was a purchaser willing, ready and able to comply with his contract of purchase; and that he was prevented from doing so by reason of the inability of defendant to confer a good title to the property.

Due to illness, the defendant was unable to attend the trial, yet the court required the parties to proceed, with the understanding that her statement might be read in evidence. Thereupon her counsel, without objection from opposing counsel, read to the jury the following statement:

"Statement of Mrs. Hudson's testimony."

"Age 69. Married R. A. Hudson on the —— day of ——————, (Fall) of 1924; R. A. Hudson owned land in question at the time of their marriage and devised same to witness. R. A. Hudson died on the 17th day of May, 1940.

"Witness never heard any question raised as to the title of said land until after the attempted sale of same by Galyean on the 6th day of July, 1940.

"Sarah F. Bell and her two sons, Hugh F. Bell and Thomas V. Bell were at the home of witness and her husband, R. A. Hudson, in 1912, and went over the place in question, stating to witness and her husband that they had formerly lived on the place, and would like to look over it. They said nothing

about having any claim or interest in said land, and knew that R. A. Hudson was living on and claiming said land, and had been since he purchased it in 1904 from W. S. Tipton, Commissioner.

"Witness signed contract with Luther Galyean in June, 1940, authorizing him to sell said land at the price of $6000.00 on the terms mentioned in said contract.

"Galyean advertised said land for sale at public auction on July 6, 1940, at which time the highest bid received was the offer of W. G. Howlett to purchase at $5,000.00; that some two or three days after said auction W. G. Howlett came to the home of witness and told her that he had bid $5,000.00 on the place, but that he refused to settle on the day of the auction by making cash payment and executing notes for deferred purchase price, and that he did not intend to take the place at $5,000.00, even if she accepted his bid, until he had had the title examined and approved by some attorney, and that as matters then stood he would not take the place at his bid of $5,000.00. That on the 15th day of July, 1940, at the insistence and request of Luther Galyean, witness signed a writing presented by the said Galyean at her home accepting W. G. Howlett's bid of $5,000.00 for the place, and that later she informed the said W. G. Howlett that she was ready to make him a deed with covenants of General Warranty for the place when he complied with the terms of sale, and that the said Howlett informed her he would not accept it; that later she again informed him she would make him a deed and a bond to protect him against any defect that might be found in the title, and the said Howlett again informed her that he would not comply with the terms of sale, and would not accept a deed with such bond;

"That so far as witness is informed the said Howlett has never agreed to comply with his bid, but has at all times refused to comply with the terms of sale, and has assumed the position that he never contracted to buy said land, and so far as witness knows he has never so contracted;

"That witness, since she accepted Howlett's bid on July 15, 1940, has at all times been ready and anxious to comply

with the terms of said auction, and has been ready and anxious at all times since said acceptance to make a good deed conveying said land to the said Howlett with covenants of general warranty, and at the same time furnish him with a good and sufficient bond to protect him at all times against any loss or damage he might suffer by reason of any defect in the title to said land that might appear, but that the said Howlett has at all times refused to comply with the terms of the sale, and informed witness that he had withdrawn his bid.

"Witness asserts that she has, and had at the time of the contract with Luther Galyean, an absolutely good and unquestionable title to said land, free from any defect of any kind, but that she did not guarantee title to said land, and did not offer to guarantee it until she offered to give a good and sufficient bond to protect said Howlett. Witness says that so far as she is informed no one has asserted any claim of any kind to said land; that since the said auction she has employed an attorney to examine her title, and that she has been advised by him that it is good and free from defect.

"Witness says that she has at no time been guilty of any breach or violation of any of the terms of her contract with Luther Galyean, but that she stood ready at all times to comply with same promptly, and to make and deliver a good and sufficient deed to the land mentioned in said contract at any time the said Galyean produced a purchaser who was able, ready and willing to buy and comply with the terms of sale."

Upon the conclusion of the reading of the statement, counsel for plaintiff made a motion to exclude it from consideration by the jury, on the ground that it contained statements immaterial to the issue and that "various portions of her statements are mere matters of opinion and expressions of what the law is." This motion the court granted.

In our opinion this action of the court constitutes reversible error. If the statement contained immaterial matter, the objection thereto should have been made before the statement was introduced, in order to afford defendant an opportunity to rectify the error by striking out any immaterial matter.

It is apparent that the statement—if believed by the jury—does contain most material evidence in support of the action of defendant. Without equivocation, the statement is made that Howlett "refused to settle on the day of the auction by making cash payment and executing notes for deferred purchase price, and that he did not intend to take the place at $5,000 even *if* she accepted his bid until he had had the title examined and approved by some attorney, and that as matters then stood he would not take the place at his bid of $5,000."

The statement is also made that the contract of July 15th was signed at the insistence of plaintiff. Also, the statement contains a specific denial of the charge that the title to the land was defective. In other words, the statements of defendant are in direct conflict with the evidence adduced by the plaintiff. This conflict should have been submitted to the jury for determination. If, under the conflicting evidence, the jury had concluded that Howlett was not a purchaser, ready, able and willing to perform his contract, then defendant was entitled to a verdict in her favor.

There can be no dispute as to the law of the case. In *Terry* v. *Bishop-Fry Co.*, 133 Va. 332, 112 S. E. 619, the rule is thus stated:

"* * * * the liability of the land owner to the agent for commissions depends upon the question whether the agent at the time fixed for the completion of a contract of sale which the agent relies on as entitling him to commissions, has produced a purchaser ready, willing and able to comply with the land owner's contract or as varied by mutual consent."

For the reasons stated, the judgment complained of will be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed.*