## CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Charles R. Hooff, Inc.

v.

Earl W. Baughman, Jr., et al.

March 8, 1984

Case No. (Law) 8488

By JUDGE ALBERT H. GRENADIER

This is a suit to recover a real estate commission, which the plaintiff claims is due under the terms of a sales contract between the defendant sellers and Timothy Edward Jackson as purchaser of the property located at 124 South Fairfax Street, Alexandria, Virginia. The case came on for trial on February 10, 1984, and at the conclusion of the evidence the Court took the matter under advisement.

After a full and careful consideration of the evidence in this case, the arguments advanced at the trial and the post-trial memoranda of counsel, the Court is of the opinion that the plaintiff is entitled to recover its commission from the defendants.

The facts in this case are, for the most part, not in dispute. In February 1983, the defendants contracted to sell their property at 124 South Fairfax Street to T. Mitchell and Emily B. Willey for the sum of $295,000.00. The contract was contingent upon the Willeys' securing financing on or before May 6, 1983, and gave the defendants the option of declaring the contract null and void if the financing was not secured by that date. Before the Willeys had completed their financing arrangements, on May 25, 1983, the plaintiff's agent, Betty Quirk, submitted to the

defendants an offer by Timothy Edward Jackson to purchase the subject property for $305,000.00. This offer was accepted by the defendants on June 2, 1983, by contract Addendum No. 1 and was designated a back-up contract to the Willey contract.

On June 3, 1983, after seeking the advice of counsel, the defendants hand delivered to the Willeys and their agents a notice exercising their option to declare their contract null and void by reason of the Willeys' inability to timely obtain financing. Upon being notified of this fact, Ms. Quirk prepared Addendum No. 2 to the Jackson contract, whereby the defendants acknowledged the cancellation of the Willey contract and declared the Jackson contract to be the primary contract. The addendum was executed by the defendants on June 5, 1983. The defendants did not ask Ms. Quirk her opinion concerning the cancellation of the Willey contract, indicating that they had received advice from counsel. The defendants did tell Ms. Quirk, however, that the Willeys might make a legal issue over the voiding of their contract and hoped they could move up the settlement date of the Jackson contract. The defendants indicated their preference to settle at this time under the Jackson contract.

On June 3, 1983, Mr. Jackson secured an oral loan commitment from David Burke of Burke & Herbert Bank & Trust Company and on June 8, 1983, a written loan commitment was issued. On June 10, 1983, the Willeys filed a suit for specific performance and recorded in the land records a notice of lis pendens. They also filed a notice of motion for a preliminary injunction returnable on June 15, 1983. Late in the day on June 14, 1983, Ms. Quirk learned that the Willeys had filed a suit and that a lis pendens had been recorded and that there was to be a court hearing the following day. She relayed this information to Mr. Jackson the same day.

On June 15, 1983, there was a closing on the sale of Mr. Jackson's home in Charleston, South Carolina. The cash proceeds were directed to be wired here for settlement on the Fairfax Street house. Mr. Jackson claimed that at all times on and after June 15, 1983, he was ready, willing and able to go to settlement, notwithstanding the pending suit and the lis pendens

and that he told his attorney to advise all parties concerned of his intention to go to settlement.

The hearing scheduled for June 15, 1983, began, but before it was concluded the parties to the two contracts entered into settlement discussions. As a result of these discussions Mr. Jackson agreed to accept $18,000.00 cash to relinquish his contract on the property. An agreement and a mutual release were prepared by the attorney for the defendants, Michael Chamowitz, which documents were executed by all of the parties to the two contracts except the plaintiff broker and its agent, Ms. Quirk, although they were named as parties in the documents and places for their signatures appeared thereon. As there was an indication that the plaintiff would not relinquish its rights to a commission, these documents were never formally presented to the plaintiff and Ms. Quirk for signature.

The defendants paid a 6% real estate commission on the Willey contract, which ultimately went to settlement. Mr. Baughman understood that the plaintiff might try to collect a commission and he was aware when he signed the settlement documents that the plaintiff did not agree to release its claim for a commission. The plaintiff filed suit on September 29, 1983, claiming a 3% commission for procuring the Jackson contract.

Generally, when a real estate broker, pursuant to a valid listing agreement, procures a purchaser for a listed property ready, willing and able to buy upon the terms defined by the owner, then the agent is entitled to his commission. The fact that the purchaser later defaults or that the sale is not consummated does not deprive the broker of the right to receive his commission unless the failure to consummate is due to some fault of the broker.

*Kingsland Land Corp. v. Lange*, 191 Va. 256 (1950); *Reiber v. James M. Duncan, Jr. and Associates, Inc.*, 206 Va. 657 (1965).

The defendants contend that the plaintiff broker did not produce a ready, willing and able purchaser. The evidence, however, leads to a contrary conclusion. The Court finds by a clear preponderance of the evidence that Mr. Jackson at all times material herein stood ready, willing, able and desirous of purchasing

the subject property. Having full knowledge of the pending suit and the lis pendens he was still prepared to go to settlement on his contract.

And the fact that Mr. Jackson ultimately accepted $18,000.00 to relinquish his rights under the contract does not defeat the plaintiff's right to a commission. The plaintiff was in no way responsible for the failure of the parties to consummate the sale and did not consent to the release of the purchaser by the defendants.

A buyer and seller cannot, by mutual agreement, settlement or release defeat the broker's right to his commission. As a general rule, a subsequent release of the purchaser by the owner, or an agreed cancellation or rescission of the contract, does not prevent the broker from recovering his commission for having procured the purchaser where a valid contract has been entered into between the owner and the purchaser. 12 Am.Jur.2d, *Brokers*, Sec. 213 (1964); 12 C.J.S., *Brokers*, Sec. 165.

And if a broker has found a purchaser ready and willing to comply with the vendor's terms, has brought the parties together and they have entered into a valid contract of sale, the vendor is liable to the agent for compensation if, without the latter's consent, he releases the vendee rather than incur the expense, annoyance or delay of litigation. *Middle Atlantic Immigration Company v. Ardan*, 115 Va. 148 (1913).

In *Parker v. West*, 191 Va. 710 (1951), the court held that the broker cannot be deprived of his commission by the vendor's voluntary release of the vendee from liability under the written agreement of sale without the knowledge and consent of the broker.

The general principle is that if a broker has acted in good faith and has done all that he is required to do in the performance of his contract to sell the land of his principal but the sale is not consummated by reason of the default of the principal, the broker is nevertheless entitled to his commission, as the principal cannot wrongfully interfere with the broker and escape liability. *Foltz v. Conrad Realty Company*, 131 Va. 496 (1921). Nor can a broker's fee be defeated by the fault of the seller, by his misrepresentations, or by his whimsical and unreasonable

refusal to comply with his contract. *Bear v. Parrish*, 148 Va. 754 (1927).

It should be noted that the so-called title defect was created by the defendants when they sought to declare the Willey contract null and void. They reputedly wrote the cancellation notice upon the advice of counsel. The plaintiff broker and its agent gave no advice, rendered no opinion as to the validity of their action in so doing and had absolutely nothing to do with their decision in this regard. The defendants thereupon entered into the second addendum to the contract, making the Jackson contract the primary contract. They did so with full knowledge that the Willeys would probably take legal action. When the Willeys filed suit and sought an injunction the defendants, after receiving legal advice from their attorney, made a conscious choice to buy off Mr. Jackson and settle on the Willey contract. The defendants also knew when they entered into the settlement with Jackson that the broker might make a claim for a commission. This concern was brought home even more forcefully when the broker and agent indicated their refusal to sign the settlement agreement and release.

The facts in this case clearly render the cases of *Rucker v. Peaco*, 191 Va. 128 (1950), and *Terry v. Bishop*, 133 Va. 332 (1922), inapposite.

The defendants also argue that under *Foltz v. Conrad Realty Company, supra*, where the sale falls through owing to the defective title of the principal and the broker had knowledge of the defect, the broker is not entitled to a commission. This argument is only valid, however, where the broker has not acted in good faith or where the purchaser has not been fully informed of the situation. The clear indication expressed in *Foltz* is that if the broker has acted in good faith and the purchaser is fully informed and is still willing to buy the property notwithstanding the defect, the principal cannot avoid the payment of the broker's commission.

For all of the reasons expressed above, the Court is of the opinion that the plaintiff is entitled to a commission and a judgment against the defendant for the sum of $9,150.00, together with interest at the legal rate from June 17, 1983, plus the costs of this proceeding.