LEONARD V. VAUGHAN AND COMPANY.

June 10, 1915.

1. BROKERS — *Real Estate Agents—Commissions—General Rule—Presumptions.*—In making their contracts and in producing a purchaser, real estate agents may, as a general rule, act upon the assumption that the owner can tender a title free from infirmities, and there is an implied contract that he has the ability to confer upon a purchaser a perfect title to that which he offers for sale. This presumption, however, is not conclusive, and will not be indulged when contradicted by the evidence in the particular case.

2. BROKERS—*Real Estate Agents—Commissions—When Refused—Misrepresentations of Broker.*—Where the owner of real estate, having no knowledge of the title or bounds of his land except that derived from the broker through whom he purchased, is assured by the broker that he can make quick sale thereof at a profit, and, without examining the title, places the land in the hands of the same broker for re-sale, and he makes a sale which the purchaser refuses to complete because of a defect in the title to a part of the land, which title the broker had represented as good both to his principal when he purchased and also to the purchaser at the re-sale, the broker is not entitled to his commission. The general rule stated in paragraph one of the syllabus does not apply to such a case. A recovery by the broker must be based upon some default or misconduct on the part of the owner.

Error to a judgment of the Hustings Court, Part II, of the city of Richmond, in a proceeding by motion for a judgment. Judgment for the plaintiff. Defendants assign error.

*Reversed.*

The opinion states the case.

*McGuire, Riely, Bryan & Eggleston,* for the plaintiff in error.

*Gunn & Mathews* and *W. M. Justis, Jr.,* for the defendants in error.

HARRISON, J., delivered the opinion of the court.

This controversy involves the right of the plaintiffs, Vaughan & Co., to recover of the defendant, Thomas B. Leonard, commissions alleged to be due them as real estate agents for making sale of certain property for Leonard.

It appears that Vaughan & Co. had in their hands for sale certain real estate situated on the west side of Thirteenth or Governor street, in the city of Richmond, belonging to one Wallerstein, to whom it had been sold and conveyed by a former owner through the agency of Vaughan & Co. This same agency, acting for Wallerstein, sold the property to the defendant, Leonard, who immediately replaced the same in the hands of Vaughan & Co. to be sold for his benefit, one of the inducements to his purchase being the statement of the agents that they could certainly resell it for him at a profit in a few days. In ten days thereafter a sale was made for the defendant to one Dunlop at an advance. The contract between Wallerstein and the defendant and that between the latter and Dunlop were both in writing and each contained a provision making the sale conditional on the title being free from valid objection. Dunlop, the purchaser from the defendant, had the title examined and found that no title could be made to a certain small vacant space in the rear of the lot, which was regarded as a material inducement to the purchase. Thereupon Dunlop declined to consummate the sale that had been made to him, and the defendant, Leonard, a few days thereafter, through another agency, sold the prop-

erty to other parties for a still larger price, and subject to the defect which had been developed in the title.

The theory of the plaintiffs is that this was only the ordinary case of real estate agents procuring a purchaser ready, able and willing to buy property at a stipulated price; that having done this, they cannot be defeated of their commissions because of a defect in the title; that the employer guarantees his title as to the agents and must pay their commissions although the sale they have made fails because of defect in the title.

This general rule is not denied by the defendant, but it is insisted, on his behalf, that it is not applicable to the facts of this case, it being contended that the sale to Dunlop failed through a material misrepresentation as to the lines of the property made by the plaintiffs, without fault on the defendant's part, and relied on by the latter both in his own purchase and in authorizing a sale to Dunlop; and that under such circumstances he cannot be held liable.

In support of this theory of the case the evidence tends to show that, when approached by the plaintiffs on the subject of buying the property in question, the defendant knew nothing about the property or the state of the title thereto, except such information as he acquired from the plaintiffs, who had, as real estate agents, handled the property several times; that he was shown the property by one of the plaintiffs, who pointed out the lines and told him that they included the vacant space, to which the title proved defective; "that the property was cheap, that he could certainly turn it over in a few days, and that it was unnecessary to have the title examined, mentioning that as part of the sale."

These declarations of the real estate agents were intended to and had the effect of inspiring full confidence and assuring the defendant as to what land was embraced within the lines of his purchase. The deed conveying this

property to Wallerstein included within its boundary the vacant space mentioned, and it was upon this deed and the plat filed therewith that the plaintiffs were relying in making their representations to the defendant, and subsequently to Dunlop, in making the sale to him. It further appears that the defendant did not see any plat of the property, nor was there any· reference to what the title papers showed. He relied solely on the statement of the agents, which was without qualification as to the land included in the sale. The evidence further tends to show that, in pursuance of a previous understanding with them, the defendant, cotemporaneously with his purchase, directed the plaintiffs to find a purchaser for him with a view to a quick sale at a profit; that no time was taken for an examination of the title, and that all concerned knew it had not been examined; and that the agents knew the defendant had no knowledge of the title, and that he was relying on their representation and assurance as to the true lines and the property embraced therein.

Under these circumstances, Dunlop having declined to take the property because of defective title as to a part thereof, the defendant insisted that it was neither just nor equitable to hold him liable to the plaintiffs for commissions on a sale that had failed because of their misrepresentation. We do not mean to say that there is evidence tending to prove that the plaintiffs knowingly deceived the defendant, but merely that the evidence tends to show that they represented to the defendant and to Dunlop that the lines of the property included a larger area than the fact justified, and did this knowing that the defendant's sole knowledge of the property came from them; that he was buying at their solicitation and on their assurance that they could make a quick resale of the property, as they had represented it to him, and accepted the employment to

make such sale before "the ink was dry on the defendant's contract of purchase."

The lower court being of the opinion that the plaintiffs' right to recover was not affected by the facts and circumstances shown of record tending to sustain the defendant's theory of the case, wholly disregarded all such evidence, refused the instructions asked for by the defendant submitting his theory of the case to the jury, and gave a single instruction for the plaintiff which told the jury that if they believed from the evidence that the defendant, Leonard, placed the property in the hands of the plaintiffs, and that they procured a valid contract to purchase signed by Dunlop and accepted by the defendant, then the plaintiffs had completed their contract, were entitled to their commissions, and the jury must find for them.

This instruction ignored the defendant's theory of the case and practically directed a verdict for the plaintiffs. We have not been cited to one and there does not appear to have been a case involving similar facts, or an express decision on the particular question here presented. The general rule unquestionably is that, in making their contract and in producing a customer, real estate agents may act upon the assumption that the owner can tender a title free from infirmities, there being an implied contract that he has the ability to confer upon a purchaser a perfect title to that which he offers for sale. We are, however, of opinion that this general rule can have no application where the facts are such that the ordinary presumption of knowledge by the owner and his guarantee in favor of the agents cannot be implied. The presumption afforded by the general rule is not conclusive. It may be waived by the act of the parties, and when the facts are inconsistent with the usual presumption it will not be implied. Under the facts which the evidence in the present case

tends to establish, if believed by the jury, the plaintiffs would not be entitled to the benefit of the usual presumption that the owner knows his own title and guarantees it as to the agents, because the established facts would be wholly in conflict with such a presumption.   The evidence tends to show that the sale in question failed without fault on the part of the defendant, and solely as the result of a representation which the plaintiffs assumed the responsibility of making, as to the true lines of the property, which proved to be unfounded, and caused the purchaser, Dunlop, to exercise his undoubted right to abandon the purchase.

As said by this court in *Middle, &c. Co.* v. *Ardan,* 115 Va. 148, 78 S. E. 588, "If the plaintiff is entitled to recover, it must be for a breach of contract upon the part of the defendant by reason of his having omitted to do that which by his contract he ought to have done, or having done that which by the terms of his contract he should have refrained from doing.   The recovery must be based upon some default or misconduct on the part of the defendant."

In conclusion, we are of opinion that the lower court erred in giving the instruction asked for by the plaintiffs, and further erred in refusing to give the instructions offered by the defendant in the form in which they were requested, which instructions submitted the defendant's theory of the case to the jury without prejudice to the rights of the plaintiffs.

For these reasons, the judgment complained of must be reversed, the verdict of the jury set aside, and the case remanded for a new trial not in conflict with this opinion.

*Reversed.*