# Staunton

## KINGSLAND LAND CORPORATION v. JOSEPH A. LANGE.

September 6, 1950.

Record No. 3684.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Haw & Haw,* for the plaintiff in error.

*Tucker, Mays, Cabell & Moore* and *Charles L. Reed,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

In an action at law, upon evidence submitted by consent to the trial court without a jury, Joseph A. Lange, a real

estate broker, has recovered a judgment for $2,000 against Kingsland Land Corporation for commissions for negotiating a sale of certain real estate owned by the corporation. The amount is not in controversy and the only question before us is whether the evidence adduced supports the finding and judgment of the trial court that the broker is entitled to recover the commission.

The facts, which are not in dispute, may be summarized as follows: A. J. Oley, a Richmond business man, sought the assistance of Lange, a licensed real estate broker in the same city, in acquiring a tract of land suitable for subdivision and the construction thereon of a number of houses. After looking over several other sites, Lange finally located a suitable tract of land which was owned by Kingsland Land Corporation in the western part of the city. Lange was not acquainted with any of the officers of the Kingsland Land Corporation, but on behalf of Oley he began negotiations with Milton Bierne, the treasurer of the corporation, with respect to acquiring the property. Bierne died prior to the trial below and Lange's testimony is the sole source of information as to what occurred during these negotiations.

Early in February, 1946, Lange presented to Bierne Oley's written offer to buy the property for $40,000, of which $10,000 was to be paid in cash and $30,000, with interest, was to be paid at the end of one year. This offer was declined by Bierne who insisted that the whole purchase price must be paid in cash upon the consummation of the sale, and that a cash deposit of $2,500 must be made at the time of the execution of the contract of sale. Lange communicated this information to Oley who was, however, unable without assistance to raise the required sum of $40,000 cash. Lange agreed to assist Oley with the necessary financing and to that end they entered into the following arrangement:

Oley was to put up the sum of $10,000 in cash, which was the limit of the amount he could raise. A first mortgage

of $30,000 was to be placed on the property and with this as collateral Lange was to borrow the sum of from $10,000 to $15,000 from a local bank, from which he had a firm commitment. Out of the proceeds of this loan, supplemented by his own personal funds, Lange was to lend Oley $30,000 to make up the required balance of the purchase price.

After these arrangements between Lange and Oley had been completed, Oley executed a written offer dated February 7, 1946, directed to Kingsland Land Corporation, to buy the property at $40,000 cash, "Provided the title is clear from valid objections; to be settled for at the office of Joseph A. Lange, Realtor, Agent, within thirty days from the date hereof, or as soon thereafter as title can be examined and necessary papers prepared, allowing a reasonable time to correct any objections reported by the Title Examiner. Taxes, interest, if any, to be prorated as of the day of settlement."

The offer was accompanied by Lange's check for $2,500, which was stipulated to be a deposit "to bind this contract, which is to be applied on purchase price; or refunded, if title is not good, or if this offer is not accepted within three days." To meet this deposit Oley had advanced the same amount to Lange.

Lange presented this written offer to Bierne and "thoroughly discussed with" him the arrangements which he (Lange) and Oley had made for financing the deal, and by reason of which Oley could pay the purchase price in full.

As the result of this interview Bierne approved the offer and had the corporation, through its president, execute a written acceptance thereof in these words: "We hereby accept the above offer and agree to pay the usual real estate commissions to the office of Joseph A. Lange, Realtor, Agent."

On February 15, 1946, the Internal Revenue Department levied a jeopardy tax assessment against Oley for the sum of $60,000 and perfected a lien therefor on his bank account.

As the result of this situation Oley was unable to consummate the purchase of the property within the thirty days stipulated in the contract.

In November, 1946, Kingsland Land Corporation filed a suit against Oley to compel specific performance of his contract to buy the property. In June, 1947, while this suit was still pending, Oley compromised and settled his difficulties with the Internal Revenue Department and the tax lien on his property was released.

Since Kingsland Land Corporation was still ready, willing and able to consummate the sale, Oley made the necessary arrangement to raise $7,500, the balance of the cash amount which he was to apply on the purchase price of the property, and notified Lange, by letter dated June 9, 1947, that he (Oley) was ready, willing and able to consummate the purchase of the property, provided Lange would carry out his agreement to assist him (Oley) in financing the deal, and called upon him to do so. To this demand Lange replied that because of the lapse of time and the change in his financial situation he was unable or unwilling to do this.

In further explanation of his refusal Lange testified that from the date of the contract of purchase and sale of the property on February 7, 1946, until August 31 of that year, he was ready, willing and able to fulfill his obligations to Oley, but that since the latter date he had made other financial commitments which precluded his lending financial assistance to Oley.

Because of Lange's refusal to lend him the necessary assistance Oley was unable to consummate the purchase of the property, with the result that Kingsland Land Corporation's suit for specific performance against him proceeded to a final decree. In that suit it was decreed that Oley must specifically perform the contract of purchase, and upon his default in so doing, the property was sold at his expense and bought in by Kingsland Land Corporation. After having given Oley credit for the deposit of $2,500, Kingsland

Land Corporation obtained a deficiency decree or judgment against him for the sum of $7,003.08. Subsequently Oley filed a petition in bankruptcy and obtained his discharge from the obligation of this judgment.

The broker relies upon the well-settled rule that in the absence of a special contract of employment he has earned his commission when he produces a purchaser who is accepted by the owner of the land and with whom the latter, uninfluenced by any misrepresentation or fraud of the broker, enters into a valid and enforceable contract, and that such right to a commission will not be defeated by the failure or financial inability of the purchaser to perform.

The principle governing the rights of a broker whose undertaking is to find a purchaser upon terms satisfactory to the vendor, is thus stated in Meechem on Agency, 2d Ed., Vol. 2, sec. 2448, pp. 2045, 2046: " * * * it seems to be a fair rule, sustained by the weight of authority, that, where the principal, uninfluenced by the fraud or misrepresentation of the broker, has, voluntarily, after such investigation as he cared to make and upon establishing such safeguards as he deemed desirable, accepted a purchaser produced in good faith by the broker, and has entered into a final—as distinct from a merely tentative and temporary—contract of sale with him, the fact that the buyer ultimately fails or refuses to perform the contract so made does not defeat the broker's right to his commission, * * * .

*"When the sale fails because of some error or default of the broker, he could not ordinarily recover under the rule above stated."* (Italics supplied.)

In 8 Am. Jur., Brokers, sec. 186, pp. 1099, 1100, the principle is thus expressed: "It may be generally stated that when a real estate broker procures a purchaser who is accepted by the owner, and a valid contract is drawn up between them, the commission for finding such purchaser is earned, although the purchaser later defaults or refuses to consummate the contract. Furthermore, a broker is not denied his right to commissions where the purchaser later is

found to be unable financially to comply with the terms of the contract, *unless the broker knew that the purchaser was unable to complete the contract* or unless the employer relied wholly upon the broker's judgment as to the purchaser's financial ability." (Italics supplied.) See also, *Middle Atlantic Immigration Co.* v. *Ardan*, 115 Va. 148, 157, 158, 78 S. E. 588.

The basis of the rule is that acceptance of the purchaser by the vendor, uninfluenced by fraud or misrepresentation of the broker, is a determination by the vendor of the purchaser's ability to perform. Williston on Contracts, Rev. Ed., Vol. 4, sec. 1030A, pp. 2878-9.

The application of the stated rule with its qualifications to the facts before us clearly shows, in our opinion, that the broker is not entitled to recover the commission.

During the negotiations which took place between Bierne, the representative of the owner of the property, and Lange, the broker, Bierne insisted that Oley, the prospective purchaser, pay the whole of the purchase price of the property in full. Lange knew that Oley was financially unable to do this without his (Lange's) help. Because of the confidential relationship which exists between a broker and his principal, it was Lange's duty to deal with Bierne in the utmost good faith and to inform him fully and frankly of Oley's financial situation before the principal accepted Oley's offer. *Mitchell* v. *Hughes*, 143 Va. 393, 404, 130 S. E. 225. Specifically, it was Lange's duty in offering Oley to Bierne as a cash purchaser of the property to tell Bierne of the arrangement whereby Lange was to lend Oley the greater portion of the purchase price. Had he failed to make this disclosure the broker, upon default of the purchaser, would not have been entitled to recover his commission. *Mitchell* v. *Hughes, supra.*

But Lange testified that he made a full disclosure of the circumstances to the representative of the owner of the property. He said that the arrangement which he had made with the bank to borrow the necessary funds to lend Oley

"was thoroughly discussed with Mr. Bierne," and to that extent and in that manner he did represent to Bierne that Oley was "what you call ready, able and willing to pay."

While Bierne was dead and could not testify at the trial, it is perfectly apparent that in accepting Oley as a purchaser he must have relied on what Lange told him as to how the purchase price was to be raised. Certainly it cannot be said that Bierne was not influenced thereby. The detailed arrangement meant that Kingsland Land Corporation would get the full desired cash price for the property. No investigation of Oley's financial ability was then necessary, and so far as the record shows none was made by any representative of the owner of the property. Nor did any of such representatives know Oley.

It is true that when the settlement date arrived the tax levy on Oley's funds prevented a consummation of the deal at that time. But this did not render the performance of the contract impossible or break up the deal, as was adjudicated in the specific performance suit. Moreover, after the tax lien had been cleared up both the vendor and the purchaser were ready and willing to perform the contract. In the final analysis, then, only Lange's refusal to perform his obligation to Oley and lend him the promised financial assistance thwarted a consummation of the deal. As is said in Meechem on Agency, *supra,* "when the sale fails because of some error or fault of the broker, he could not ordinarily recover under the rule" invoked by him here.

Counsel for the broker argues that it would be unreasonable to expect Lange to perform his contract and render financial assistance to Oley after the lapse of time during which the tax lien was in effect. We are not concerned in the present suit with whether this situation relieved Lange of his obligation to Oley, in so far as the rights of these two are concerned.

By virtue of his promise to lend financial aid to Oley, Lange was likewise under obligation to his principal, Kingsland Land Corporation. His promise to do so was

the very basis of Oley's promise to pay cash for the property. It was the foundation of the contract of sale and purchase upon which he bases his claim to a commission. Although Lange did not sign this contract, he was in effect a party thereto, as he had agreed with Oley to put up three-fourths of the purchase price and had so told Bierne, the owner's representative. Thus, the promise which Lange made Oley was partly for the benefit of Kingsland Land Corporation and was enforceable by it. Code of 1950, sec. 55-22.

Certainly, in so far as his right to recover a commission is concerned, Lange was under a continuing obligation to Kingsland Land Corporation. So long as he insisted that his principal should pay him a commission, the principal had the right to insist, as a condition thereof, that he perform his obligation and help Oley in raising the necessary funds to pay for the property. Having failed and refused to perform such basic obligation, Lange's claim to a commission must fail.

For these reasons we are of opinion that the judgment complained of should be reversed and a final judgment entered in favor of the defendant below. It is so ordered.

*Reversed and final judgment.*