# Richmond

ALEXANDRA PARKER AND JOHN K. PARKER v. A. J. WEST.

January 15, 1951.

Record No. 3703.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Ashburn, Agelasto & Sellers*, for the appellants.

*James G. Martin & Sons*, for the appellee.

HUDGINS, C. J., delivered the opinion of the court.

The question involved in this case is, whether a real estate agent is entitled to recover commissions from the

owner who executed a written contract of sale with the purchaser, procured by him.

On October 15, 1948, Alexandra Parker and John J. Parker, her husband, hereinafter called "vendors," agreed to sell, and D. B. Coffield, hereinafter called "vendee," agreed to buy, a tract of land containing 49.71 acres, lying on Lynnhaven inlet in Princess Anne county, for which the vendee agreed to pay the sum of $25,000, $1,000 on signing the contract, receipt of which was acknowledged, $11,500 on or before January 31, 1949, and $12,500 to be evidenced by the vendee's note, bearing interest, maturing one year from date, and secured by deed of trust. It was stipulated in the contract that the land should be conveyed by deed with covenants of general warranty "free and clear of all liens and encumbrances of every kind," and that the vendors would pay A. J. West, the agent, "the regular real estate commission as established by the Norfolk Real Estate Board of 10%."

The vendee, on January 31, 1949, wrote the vendors he would not complete the purchase. He stated in the letter "One of my reasons for not wanting the property is due to the fact that there is a burial ground on the same, and in your contract to me, you agreed to convey the property free and clear of all liens and encumberances. * * * Had I known or had you disclosed to me that there was a burial ground on this property, I would not have entered in the contract." He concluded his letter with a demand that the vendors refund the $1,000 paid when the contract was signed.

While the controversy between the vendors and vendee was unsettled, the agent instituted an action against the vendors to recover $2,500, the amount of his commissions. Thereupon, the vendors instituted this suit for declaratory judgment against the vendee and agent, and asked that the agent be enjoined from proceeding in his action at law, and that the rights of all parties be determined in the suit.

It was admitted that the vendors did not inform the real estate agent, or the vendee, of the fact that the right

to a graveyard had been reserved in the deed conveying the property to them. However, it was alleged that after the vendee was advised of the existence of the graveyard, he agreed to complete his purchase upon modified terms satisfactory to the vendors,—that is, that the total cash payments be reduced to $6,000 ($1,000 of which had been paid), and that the deferred payment be increased from $12,500 to $19,000.

The agent and the vendee filed separate answers and cross-bills in which they stated their respective contentions.

Before the introduction of evidence was completed the vendors and vendee, without the knowledge or consent of the agent, compromised their respective claims by signing a release agreement in which the vendors agreed to pay the vendee $300 of the $1,000 received by them when the contract was signed, and to release the vendee from all liability created by the contract of sale. The court entered a decree according to the compromise settlement, dismissed the vendee as a party to the cause, and ordered the vendors to pay the agent the full amount of his commissions. The vendors obtained this appeal from that part of the decree declaring that the agent was entitled to a judgment against them for commissions.

The vendors contend that the only legal question presented is whether Coffield, the vendee, was financially able to consummate the purchase as evidenced by the written agreement, within the meaning of the rule which entitles the agent to recover his commissions.

The question of the financial ability of the vendee to comply with his contract did not arise until several months after this suit was instituted. However, there is substantial evidence tending to show that after October, 1948, the vendee became financially involved, and that this condition grew steadily worse until June, 1949, when his financial difficulties reached a climax. The vendee testified that, notwithstanding his heavy indebtedness to the bank, or rather his indebtedness to the bonding company which had paid the full amount of his indebtedness to the bank, he was

able to and would have completed the purchase except for the incumbrance created by the right reserved to an old graveyard; that he had bought the property for the benefit of himself and two of his friends who were fully able to pay their proportionate parts of the purchase price. However, neither of these parties executed the contract nor were they otherwise legally bound to the vendors.

The question of whether the reservation of an old graveyard was such an incumbrance as to justify the vendee in refusing to proceed with the purchase was eliminated from the case by the vendors' release of the vendee. However, a defect in the title of the owner which is unknown to the agent is not alone sufficient to defeat recovery of his commissions, as the agent has a right to act upon the assumption that the owner is in a position to tender a title free from infirmities. *Leonard* v. *Vaughan & Co.*, 117 Va. 514, 85 S. E. 471, L. R. A. 1915E, 714.

Before an agent is entitled to recover commissions, the burden is upon him to prove that he has fully complied with the terms of his employment. The parties may stipulate that the commission shall be payable only when the purchase price has been received, or when the contract for the purchase has been executed.

It appears from the record that after the owners had agreed that West should act as their agent, the property was shown to Coffield, after which the vendors and Coffield, in the presence of the agent, verbally agreed upon the purchase price and the terms and conditions of sale of the property. On the same day the agent returned to his office in Norfolk, wrote the contract in accordance with the agreement of the parties, secured the signature of Coffield thereto and a check for $1,000, returned to the home of the vendors, secured their signatures, and gave them Coffield's check to be applied on the purchase price.

These facts bring the case squarely within the doctrine restated by Mr. Justice Eggleston in *Kingsland Land Corp.* v. *Lange, ante,* pp. 256, 261, 60 S.E. (2d) 872, to the effect that "* * * the well-settled rule (is) that in the

absence of a special contract of employment he (the agent) has earned his commission when he produces a purchaser who is accepted by the owner of the land with whom the latter, uninfluenced by any misrepresentation or fraud of the broker, enters into a valid and enforceable contract, and that such right to a commission will not be defeated by the failure or financial inability of the purchaser to perform.

"The principle governing the rights of a broker whose undertaking is to find a purchaser upon terms satisfactory to the vendor, is thus stated in Mechem on Agency, 2d Ed., Vol. 2, sec. 2448, pp. 2045, 2046: '* * * it seems to be a fair rule, sustained by the weight of authority, that, where the principal, uninfluenced by the fraud or misrepresentation of the broker, has, voluntarily, after such investigation as he cared to make and upon establishing such safeguards as he deemed desirable, accepted a purchaser produced in good faith by the broker, and has entered into a final—as distinct from a merely tentative and temporary—contract of sale with him, the fact that the buyer ultimately fails or refuses to perform the contract so made does not defeat the broker's right to his commission.

&ast; &ast; &ast; &ast; &ast; &ast;

"The basis of the rule is that acceptance of the purchaser by the vendor, uninfluenced by fraud or misrepresentation of the broker, is a determination by the vendor of the purchaser's ability to perform. Williston on Contracts, Rev. Ed., Vol. 4, sec. 1030A, pp. 2878-9."

This general rule is not applicable to a case where the agent knows, or has reasonable cause to believe, that the purchaser introduced by him to the owner is a man of straw, or a man without means. See *Poff & Co.* v. *Ottaway*, *post*, p. 779, 62 S. E. (2d) 865.

There is no evidence tending to show that the broker did not act in good faith in his dealings with the vendors. He testified that he had known Coffield for only three or four months before the transaction in question; that he knew he was an automobile dealer and in a "good line of business"

and he assumed that he "was thoroughly reliable." It is not claimed that the broker made any representation as to Coffield's financial responsibility, or that he concealed any pertinent fact from his employers.

Mr. Parker testified that he and Coffield, after some discussion, verbally agreed upon the terms and conditions of sale that thereafter were incorporated in the written contract prepared by the agent. He did not testify that the agent made any representation to him concerning the financial ability of Coffield to comply with the terms of the contract. He did say that he had not met either of the gentlemen before they came down to his place to inspect the property and during that time he observed them and thought they were acting in good faith.

It, therefore, appears that the vendors, in accepting Coffield as purchaser, acted on their own independent judgment and not on any representation made by the agent.

The agent further contends that when the vendors, without his knowledge and consent, voluntarily released the vendee from liability under the written contract of sale, they became liable for his commissions. This contention is sound.

In *Middle Atlantic Immigration Co.* v. *Ardan*, 115 Va. 148, 78 S. E. 588, Judge Keith quoted with approval from a Tennessee case as follows: " 'If such a purchaser, being thus bound, undertakes to avoid his agreement upon insufficient legal grounds, the vendor may, if he choose, compel a specific performance; but if he elect to release him rather than to incur the expense, or annoyance, or delay of a litigation, he ought not in equity and justice make such election at the expense of his broker.' " To the same effect, see *Amies* v. *Wesnofske*, 255 N. Y. 156, 174 N. E. 436, 73 A. L. R. 918, 926; *Tarbell* v. *Bomes*, 48 R. I. 86, 135 A. 604, 51 A. L. R. 1386; Annotation 1390, 1392.

The decree of the trial court is affirmed.

*Affirmed.*