ROBERT E. KUGA, ET AL.

V.

JAN H. CHANG, T/A VIRGINIA REALTY & DEVELOPMENT

Record No. 900617

January 11, 1991

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting, Lacy, JJ., and Poff, Senior Justice

*R. Terrence Ney (John S. Morris, III; Joseph W. Wright, III; McGuire, Woods, Battle & Boothe*, on brief), for appellants.
*Kennon W. Bryan (David A. Roll; Tydings, Bryan, Adams & Ritzert*, on brief), for appellee.

SENIOR JUSTICE POFF delivered the opinion of the Court.

The principal question raised on this appeal is whether the trial court erred in holding that a real estate agent was entitled to the commission fixed in the contract of employment when the purchaser, who was ready, willing, and able to perform at the time the contract was executed, later repudiated the contract and refused to perform.

We review the evidence adduced in a bench trial. In March 1987, Robert and Holly Kuga signed an agreement with Manor Homes of Virginia, Inc. (MHVA), listing their home for sale. The listing agreement provided that the Kugas agreed to pay "a compensation of six percent . . . if anyone produces a purchaser ready, willing and able to buy the property". Jan H. Chang, a real estate agent trading as Virginia Realty & Development (VRD), showed the home to Charles Rainwater. On June 30, 1987, the Kugas, Rainwater, and Chang executed a sales contract calling for closing at a price of $930,000 on September 15, 1987 and providing that MHVA and VRD share the commission fixed in the listing agreement.

On September 2, 1987, Rainwater announced that he had found another home he liked better and would not close on his contract with the Kugas. The Kugas tendered settlement on September 4, Rainwater did not appear, and the Kugas filed suit against him seeking specific performance or damages. By amendment, the Kugas confined their bill of complaint to a claim for damages. In June 1988, while that suit was pending, the Kugas sold their home to another buyer and paid another broker a commission on the sale. The sales price was greater than that fixed in the Rainwater contract, and the Kugas and Rainwater negotiated a compromise settlement of the litigation and executed mutual releases. Chang and the listing broker were not included in the negotiations, and the record does not show the terms of the settlement.

Pursuant to the Kugas' contract, Rainwater had deposited $5,000 in an escrow account with Morris A. Nunes, the settlement attorney. In September 1988, the Kugas filed a warrant in debt against Nunes and Chang, seeking payment of the deposit under the forfeiture provisions of the sales contract. Nunes interpleaded the deposit to the district court and later was dismissed as a party defendant. Chang removed the case to the circuit court and filed a counterclaim demanding $27,900, representing three percent of

the Rainwater sales price, her share of the commission prescribed in the listing agreement as modified in the sales contract.

In a final order entered February 12, 1990, the trial court granted Chang's counterclaim, divided the earnest-money deposit between Chang and the Kugas, and ordered that Chang's share of the deposit be credited against her counterclaim. We awarded the Kugas an appeal.

■ Here, as in the court below, the Kugas challenge the trial court's findings in the letter opinion underlying the final order. In that opinion, the court found that the contract of employment upon which Chang rested her counterclaim was a general, as distinguished from a "special", contract; that "the broker produced a ready, willing, and able buyer" as provided in that contract; and, hence, that Chang "was entitled to a commission, even if the buyer later wrongfully defaulted on the contract". The trial court based its conclusions upon this Court's opinion in *Kingsland Land Corp.* v. *Lange*, 191 Va. 256, 60 S.E.2d 872 (1950). There, we were asked to apply what we defined in the following language as "the well-settled rule":

> [I]n the absence of a special contract of employment [a broker] has earned his commission when he produces a purchaser who is accepted by the owner of the land and with whom the latter, uninfluenced by any misrepresentation or fraud of the broker, enters into a valid and enforceable contract, and . . . such right to a commission will not be defeated by the failure or financial inability of the purchaser to perform.

*Id.* at 261, 60 S.E.2d at 874.

■ Paraphrasing the principles articulated in our opinion in *Kingsland* and applied in related cases, we will summarize the law in this Commonwealth governing the rights a real estate agent acquires under a general contract of employment. When an agent, acting in good faith, produces a purchaser ready, willing, and able to buy the seller's real estate upon the terms fixed in the listing contract and the seller accepts the purchaser as such, the agent acquires an inchoate right to the commission prescribed in that contract. Absent fraud on the part of the agent, when the seller executes a contract of sale, he accepts the purchaser as one contemplated by the contract of employment. At that point, even

though the sale fails to close, the agent's *inchoate* right ripens into an *actionable* right if the failure results from any fault on the part of the seller, such as the seller's refusal to close, *see Campbell* v. *Sickels*, 197 Va. 298, 301, 89 S.E.2d 14, 18 (1955); *Reiber* v. *Duncan*, 206 Va. 657, 660-62, 145 S.E.2d 157, 160-61 (1965), or from the seller's release of the purchaser's liability under the sales contract, *see Parker* v. *West*, 191 Va. 710, 714, 62 S.E.2d 862, 864 (1951). The same is true when the purchaser defaults, unless the agent contributed to the purchaser's default, as in *Kingsland*, 191 Va. at 262-64, 60 S.E.2d at 875-76 (agent breached promise to lend financial aid to purchaser), or contributed to the purchaser's repudiation of the contract as in *Leonard* v. *Vaughan & Co.*, 117 Va. 514, 519, 85 S.E. 471, 473 (1915) (agent misrepresented lines of property).

■ On brief, the Kugas contend that the trial court erred in applying these rules because, they say, the contract they executed "was a special contract of sale which conditioned Chang's entitlement to a commission on the consummation of the sale." Whether the contract of employment is to be general or special is, of course, the choice of the contracting parties. "The parties may stipulate that the commission shall be payable only when the purchase price has been received, or when the contract for the purchase has been executed." *Parker* v. *West*, 191 Va. at 714, 62 S.E.2d at 864; *accord Hensley* v. *Moretz*, 197 Va. 440, 445, 90 S.E.2d 183, 186 (1955); *see also Massie* v. *Firmstone*, 134 Va. 450, 456, 114 S.E. 652, 653-54 (1922). The question we must decide, then, is whether the trial court erred in finding that the contract in this case was a general contract governed by the rules we have summarized.

The sales contract executed by the seller, the purchaser, and the agent provided in paragraph 10 as follows:

SELLER agrees to pay AGENT compensation on the sales price of the property agreed upon between SELLER and listing broker and to instruct the parties conducting settlement to deduct the same from the proceeds of the sale and disburse 3% to VRD and remaining amount of compensation to MHVA as listing broker.

As the Kugas observe, "[t]his Court has never specifically addressed the question of whether contractual language making

commission payable on 'the sales price' and directing that commission be deducted 'from the proceeds of sale' creates a special contract." They urge us now to adopt the decisions of some courts in other jurisdictions that have answered that question in the affirmative. We decline to do so. In most of the cases cited, the facts and circumstances and the import of the language of the contract documents were materially different from those in the case at bar. In those cases which are factually similar, we find the reasoning unpersuasive.

The Kugas focus their argument on the sales contract. However, the contract at issue here, the contract of employment, consists of the sales contract read together with the terms of the listing agreement which it incorporates by reference. The listing agreement obligated the Kugas to pay "a compensation of six percent . . . if anyone produces a purchaser ready, willing and able to buy the property". Hence, as we construe the contract of employment, the three contracting parties agreed that the sellers would pay the agent compensation for services as defined in the listing agreement, that the quantum of compensation would be determined by applying the percentage factor fixed in the listing agreement to the price fixed in the sales contract, and that the settlement attorney would pay any commission thus determined directly to the agent and the listing broker rather than to the sellers as part of the proceeds of sale. Nowhere in the sales contract or in the listing agreement did the parties to the contract of employment agree that the commission due an agent who produced a purchaser accepted by the sellers would be paid only if and when the purchaser performed by paying the sales price. *Cf. Hensley* v. *Moretz*, 197 Va. at 445, 90 S.E.2d at 186.

Consequently, we uphold the trial court's findings that Chang was "due compensation . . . pursuant to the terms of the Contract of Sale and the listing agreement"; that "[t]he contract in this case was not a special contract";* and that "settlement of the Contract of Sale [was] not a condition precedent to the obligation for payment of compensation".

Nevertheless, the Kugas argue that the question remains "[w]hether a forfeiture provision in a real estate sales agreement creates an exclusive source of compensation for the real estate

---

* Our decision in *Terry* v. *Bishop-Fry Co.*, 133 Va. 332, 112 S.E. 619 (1922), upon which the Kugas principally rely, construed and applied a special contract and is inapposite to the issue here.

broker in the event of default by the purchaser". In support of their assignment of error raising that question, the Kugas contend that any commission Chang earned should be limited to that prescribed in paragraph 24 of the Rainwater sales contract. That paragraph reads in part as follows:

> If the PURCHASER shall fail to make full settlement, the deposit herein provided for may be forfeited at the option of the SELLER and/or AGENT or the SELLER may avail himself of other legal and equitable remedies. In the event of forfeiture the deposit will be divided equally between SELLER and AGENT (AGENT'S share of any forfeitures shall not exceed the amount of compensation due under the terms of the contract).

Paragraph 24 gives a seller confronted by a purchaser's default a choice of alternative remedies. The seller (or the agent) "may" exercise the forfeiture option and obtain half of the earnest-money deposit "or" the seller "may" sue the purchaser for specific performance or for damages resulting from the purchaser's breach of contract. We find nothing in the language of paragraph 24 to support the proposition that Chang was compelled to accept a portion of the earnest-money deposit as her "exclusive source of compensation . . . in the event of default by the purchaser". To the contrary, the "forfeiture provision" merely affords the agent "the option" to demand and receive her part of the earnest-money deposit as an alternative to litigation of her entitlement to the compensation fixed in the contract of employment.

Chang did not choose that option. She chose to litigate, she prevailed at trial, and finding no error in the court below, we will affirm the judgment in her favor.

*Affirmed.*