993 F.2d 1541
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
WEBSTER, INCORPORATED, d/b/a Webster Realty, Plaintiff-Appellant,
v.
Alvin I. BROWN, individually and as trustee and agent for
others, Defendant-Appellee.
 No. 92-2308.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 5, 1993
Decided: June 8, 1993
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CA-92-197-A)
 Thomas John Stanton, Leonard, Ralston, Stanton & Danks, Washington, D.C., for Appellant.
 Gerald Richard Walsh, Walsh & Cremins, P.C., Fairfax, Virginia, for Appellee.
 Jan F. Hoen, Walsh & Cremins, P.C., Fairfax, Virginia, for Appellee.
 E.D.Va.
 VACATED AND REMANDED.
 Before WILKINS and LUTTIG, Circuit Judges, and KISER, United States District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Webster Realty, a licensed real estate broker, brought this breach of contract action against Brown for the balance of a commission supposedly owing incident to the sale of property by Brown on behalf of himself and as trustee and agent for other co-owners. The district court, reasoning that the terms of the commission stipulated in the sales contract were clear and unambiguous, refused to consider the effect of an alleged earlier oral listing agreement between Webster and Brown and entered summary judgment in favor of Brown based upon the sales contract. Because we conclude that the language of the contract was ambiguous, we vacate the judgment of the district court and remand for additional proceedings.
 
 I.
 
 2
 The relationship between the parties grew out of their efforts to effect the sale of Brown's property in Stafford County, Virginia. Brown and Webster agreed that Webster would essay to procure a ready, willing, and able purchaser of the property. After a series of abortive proposals, Webster submitted William H. Plank's offer dated May 6, 1988, which Brown accepted and signed as a contract on May 16. By an amendment dated September 19, 1988, Donald H. Dildy was substituted as purchaser, and the sales price was increased by $450,000. J.A. at 21.
 
 
 3
 Under the terms of the sales contract, Dildy agreed to pay 20% of the purchase price at settlement with the remainder of the price secured by a purchase money note and deferred over two years with quarterly interest payments. At the core of this dispute is paragraph 21 of the contract, which provided in relevant part as follows:
 
 
 4
 Seller hereby acknowledges that there will be and agrees to pay a real estate commission of five percent (5%) of the sales price paid to Seller at settlement and thereafter. The commission will be payable to Webster Realty in installments of five percent (5%) of each cash payment made to Seller at settlement and thereafter pursuit [sic] to the deferred purchase money note.
 
 
 5
 Id. at 18. In the event of Dildy's default prior to settlement, paragraph 21 provided that he was immediately to pay to Webster the described commission, id., but no provision was made for post-settlement default.
 
 
 6
 Settlement occurred on January 19, 1989. Soon thereafter, Webster received five percent of the downpayment contemplated under the original Plank contract (not five percent of the amount actually paid at settlement, which was based upon the sales price as increased pursuant to the September 19 amendment). Webster thereafter received commission payments based on three quarterly interest payments made under the deferred purchase money note, but again the commissions were in amounts based on the original sales price, not the amounts actually paid pursuant to the amended contract. Dildy then defaulted. Brown, on behalf of the new owners (comprising some of the original owners and two others), commenced foreclosure proceedings and purchased the property at the foreclosure sale.
 
 
 7
 Webster brought suit for breach of contract under Virginia law claiming entitlement to the balance of the commission it presumably would have been paid had Dildy made all payments remaining under the deferred purchase money note, based upon the amended rather than the original sales price. Webster also sought the difference between the sum of the four commission payments actually made, which were based upon the original sales price, and the commission payments that would have been made had they been based upon the amended sales price.
 
 
 8
 Webster, which was not a party to the contract but whose agent had signed the contract as a witness, id. at 19, indicated in its complaint that it was suing as a third-party beneficiary to that contract. E.g., id. at 13 ("Under the terms of the Contract the Seller agreed to pay 'a real estate commission of five percent (5%) of the sales price paid to Seller at settlement and thereafter.' "); id . at 8 ("During the negotiations that led up to the signing of the Contract, to which Plaintiff itself was not a party, but was a third party beneficiary...."). In a motion for summary judgment, Brown argued essentially that the plain language of paragraph 21 made payment of all commissions contingent upon payments by the purchaser, whether as a downpayment or pursuant to the deferred purchase money note, and that all commission payments required under the contract had therefore been made.
 
 
 9
 In opposition to the motion for summary judgment, Webster asserted for the first time that it was proceeding at least in part under an oral listing agreement allegedly consummated at a meeting in early November 1987 between Brown and two agents of Webster. Webster argued that once outside the statute of frauds by virtue of the written sales contract, the oral agreement controlled, or alternatively that paragraph 21 was ambiguous and that extrinsic evidence, particularly that of the oral agreement, should be admitted. Webster's theory of the case under each approach was that the parties had agreed that some commission payments would be deferred, consistently with the terms of the deferred purchase money note, but that Brown was ultimately liable to Webster for five percent of the contract sales price.
 
 
 10
 The district court refused to consider the alleged oral agreement. After concluding that the sales contract constituted a sufficient writing to remove the agreement between Webster and Brown from the statute of frauds and that paragraph 21 by its terms did not provide for payment of commissions absent a corresponding payment by the purchaser, the district court entered summary judgment for Brown. Webster appeals.
 
 II.
 
 11
 As in Murphy v. Nolte & Co., 307 S.E.2d 242, 245 (Va. 1983), "we must focus precisely on just what contract is sought to be enforced." The instant case is easily distinguishable from Murphy, where the agent had not signed the written sales contract and where the pleadings revealed that it was not the sales contract but rather a separate listing agreement between the seller and the real estate agent that was the subject of scrutiny. Id. Here, on the other hand, Webster did sign the contract, and the pleadings indicate that Webster sought to enforce only the sales contract, of which it claimed to be a third-party beneficiary. Nowhere in its complaint did Webster ever allege breach of an oral contract, and the district court therefore properly declined to consider any theory of recovery premised upon one.
 
 
 12
 This does not end our inquiry, however. We must still determine whether the district court properly awarded Brown summary judgment based upon the terms of the written sales contract. As a preliminary matter, we have no doubt that the contract constituted a sufficient written memorandum to satisfy the Virginia statute of frauds, see Va. Code Ann. § 11-2; see also Murphy, 307 S.E.2d at 244-45; Reynolds v. Dixon, 46 S.E.2d 6, 8 (Va. 1948). At a minimum, the contract, which was reduced to writing and signed by the party to be charged thereby, embodied the essential terms of the agreement: the contract identified the property for sale and the parties to the agreement, and its paragraph 21 specifically acknowledged the role played by Webster and provided for payment of a commission as a result. See, e.g., Drake v. Livesay, 341 S.E.2d 186, 188 (Va. 1986); Murphy, 307 S.E.2d at 245.
 
 
 13
 We cannot conclude, however, as did the district court, that paragraph 21 is clear and unambiguous. The first sentence of the paragraph in our view is most naturally read as a commitment by the seller to pay a real estate commission of 5% of the total sales price, regardless of whether the purchaser defaults. That is, the sentence is best read as an agreement by the seller to pay a real estate commission of 5% of the sales price, which sales price was to be paid by the purchaser through a predetermined settlement amount and subsequent installment payments. Such a reading comports with the general practice regarding real estate commissions, see generally Kuga v. Chang, 399 S.E.2d 816, 818-19 (Va. 1991), and is consistent with Virginia law that a special contract to condition a real estate agent's fee upon the buyer's full performance will not be recognized absent clear evidence of such an intent, see, e.g., Burns v. Eby & Walker, Inc., 308 S.E.2d 114 (Va. 1983). This reading gives meaning to the second sentence describing the manner and timing of the commission's payment, which under the district court's interpretation of the paragraph is surplusage. It gives meaning to each word of the phrase"the sales price paid to Seller," which phrase is almost nonsensical under the district court's reading, given that a "sales price" can only be "paid to Seller." It avoids construing the contract to establish a series of discrete commitments, as is required by the district court's interpretation. And it is most faithful to the obvious reality that the parties simply failed to provide for the purchaser's default after settlement.
 
 
 14
 On the other hand, while we believe that the forementioned is the far better reading of the paragraph, we are unwilling to wholly discount the possibility that the parties could have intended by the paragraph 21 language to allocate the risk of pre-settlement purchaser default on Brown but that of post-settlement default on Webster. We believe, therefore, that the intent of the parties is unclear from the language of the contract.
 
 
 15
 Because the language of the contract is ambiguous, the district court erred in granting summary judgment to Brown without permitting the parties to mount additional evidence as to their intent.*
 
 CONCLUSION
 
 16
 For the reasons stated above, we vacate the judgment of the district court and remand for proceedings consistent with this opinion.
 
 VACATED AND REMANDED
 
 
 *
 Because the issues were not addressed below, we express no opinion on whether Webster properly based its claim upon the amended rather than the original sales price or on whether Dildy's default extinguished Webster's third-party rights under the contract